## Frei, et al. *v.* Unemployment Compensation Board of Review.

Argued March 7, 1972, before President Judge Bow-
MAN and Judges CRUMLISH, JR., KRAMER, WILKINSON,
JR., MENCER, ROGERS and BLATT.

*Bernard N. Katz,* with him *Warren J. Borish* and
*Meranze, Katz, Spear & Bielitsky,* for appellants.

*Sydney Reuben,* Assistant Attorney General, with
him *J. Shane Creamer,* Attorney General, for appellee.

OPINION BY JUDGE WILKINSON, April 17, 1972:

This is an appeal from the Decision and Order of
the Unemployment Compensation Board of Review, af-
firming the decision of the Referee who had sustained
the determination of the Bureau that appellants were
separated from their employment for reasons it con-
sidered willful misconduct within the provisions of Sec-
tion 402(e) of the Pennsylvania Unemployment Com-
pensation Act, Act of December 5, 1936, Second Ex.
Sess., P. L. 2897 (1937), as amended, 43 P.S. §802(e).
We must reverse.

The issue here is a very narrow one. The facts are
not in dispute. A local union of the same international
union to which the appellants belong was on strike in
a plant owned and operated by appellants' employer in
Maryland. The appellants' local union had a contract

with the employer that contained the following no-strike clause:

"28. No Strikes or Lockouts—There shall be no strike, interruption of work, partial or complete stoppage of or refusal to work, boycott or temporary walk-out on the part of the employees or the Union, and there shall be no lock-out on the part of the Company during the term of this agreement."

Appellants' local and the employer were informed that pickets from the Maryland plant might appear at the Harrisburg plant. The employer was notified that the local union would abide by its contract and would not strike. In a letter of July 7, 1970, the local informed the employer as follows:

". . . We have advised our membership that in the event pickets do appear, that our local union is in no way directly connected to the pickets, nor involved in the dispute at the struck plant. I have further advised our membership that our local union intends to abide by the 'no strike' clause. However, we are also certain that you are aware that to some members of the labor movement, crossing a picket line is morally offensive and repugnant.

"Accordingly, it may fairly be anticipated that some of our members will, in all probability, refuse to cross a picket line because of their own ethical convictions. . . ."

The employer replied in a letter of July 8, 1970:

". . . Your letter is a very great disservice to our employees whom you represent. You know full well that our labor contract contains a very clear and complete no strike clause. As the representative of our employees you agreed that during the term of the contract there would be no stoppage of work by any employee for any reason.

"You should have advised our employees that they are not protected by law or the contract if they refuse

to work by honoring a picket line during the term of our contract. Such conduct on the part of our employees would be illegal and we have already advised them that we intend to discipline any employee who breaches the contract and his responsibility as an employee of Stroehmann Brothers. We are supplying our employees with a copy of this letter to remind them of their obligations and reaffirm our intentions in this regard. . . ."

The issue was drawn. Four pickets appeared on July 9, 1970. Forty-six employees, all members of the same local as appellants, crossed the picket line. The three appellants did not. Each was told he was discharged. There was no work stoppage but when appellants reported for work after the pickets had been withdrawn, they were informed they had been discharged.

Although it is not controlling, the bona fides of the appellants' position that crossing the picket line was repugnant to their individual consciences is amply supported by the fact that two were 10-year employees and one was a 9-year employee of the employer, and all had had good work records and absented themselves from work at this time for only the one day that the picket line was at the plant. During that day, they did not join the pickets or solicit others not to cross the line.

Little if any help is received from the Act itself or the decided cases as to whether refusal to cross a peaceful picket line, where there is no labor dispute in existence at the plant where the employee works, can be considered "willful misconduct" as the phrase is used in Section 402(e), 43 P.S. §802(e). Appellants and appellee agree that the National Labor Relations Board in other cases, and the Arbitrator in the grievance procedure instituted by the appellants under the union

contract in this case, have ruled that the refusal to cross the picket line under these circumstances was not such conduct as to justify a dismissal. While the NLRB rulings are not binding on this Court, certainly a determination that appellants' conduct was proper and indeed protected under the Labor Management Relations Act of 1947, 29 U.S.C.A. §141 *et seq.* is persuasive when considering whether the same conduct shall be characterized as "willful misconduct" under the Pennsylvania Unemployment Compensation Code. We think it cannot be.

The Referee determined that Section 28 of the union contract, quoted herein, required appellants to cross the picket line and this is what made the refusal "willful misconduct." The plain language of Section 28 refers to action by employ*ees.* The words "strike," "refusal to work," "boycott," "walk out," when tied in with employ*ees,* requires action in concert, group action. All the evidence in this record is quite clear that the three appellants acted individually and not in concert. If Section 28 was intended to apply to the action of one employee in refusing to work, the words "of an employee or" would be required before the words "the employees."

We are not unmindful of the decision of the Superior Court in *Gagliardi Unemployment Compensation Case,* 186 Pa. Superior Ct. 142, 141 A. 2d 410 (1958), that the findings of the Arbitrator are not binding on the Board; nevertheless, it is persuasive that the Arbitrator, whose decision on the meaning of Section 28 is binding between the parties, interpreted Section 28 in the same way we do.

### ORDER

Now, April 17, 1972, the appeal of John A. Frei, Joseph C. Moore, and David F. Buskey is sustained and the order of the Unemployment Compensation

Board of Review is hereby reversed and the record remanded for action by the Board not inconsistent with this opinion.

President Judge BOWMAN and Judge MENCER dissented.