William E. Miller, Appellant, Samuel W. Blum, Appellant, Ray Bonzo, Appellant, Martin S. Kuttesch, Appellant, Russell DePietro, Appellant, Theodore Bohizic, Appellant, LeRoy McClendon, Jr., Appellant, v. Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Appellee, and Rockwell International, Intervening Appellee.

Argued July 30, 1974, before Judges WILKINSON, JR., MENCER and ROGERS, sitting as a panel of three.

*Harry Alan Sherman,* for appellants.

*Sydney Reuben,* Assistant Attorney General, for appellee.

*Henry J. Wallace, Jr.,* with him *Reed, Smith, Shaw & McClay,* for intervening appellee.

OPINION BY JUDGE ROGERS, September 6, 1974:

We consolidated for argument and disposition the appeals from actions of the Unemployment Compensation Board of Review of the following named former employes of the intervening appellee, Rockwell International Corporation:[1] William E. Miller, Samuel W.

---

[1] At the time of the events involved in this proceeding the plant in which the appellants worked was owned by and they were employes of Rockwell-Standard Company. As the result of mergers and a change of name of the present successor to Rockwell-Standard is Rockwell International Corporation.

Blum, Ray Bonzo, Martin S. Kuttesch, Russell DePietro, Theodore Bohizic, and LeRoy McClendon, Jr.

All of the appellants were, prior to September 1, 1971, industrial workers employed at the intervening appellee's transmission and axle plant located at New Castle, Pennsylvania. Since 1960 the maintenance and production workers at the New Castle plant have been included in a bargaining unit consisting of the employes of Rockwell and covered by a company-wide collective bargaining agreement with the United Steel Workers of America. The employes of four other Rockwell plants were included in the unit. The 1960 agreement seems to have been for three years and, as modified, was renewed each three years after that time. The last expiration time was midnight August 31, 1971. The employes of the New Castle plant, including all of the appellants, were at all times mentioned herein members of Local 4194 of the United Steel Workers of America.

Since about 1968 some of the employes at the New Castle plant have been dissatisfied with their representation by the United Steel Workers on a company-wide basis and have desired to be represented instead by a local union formed by them known as Confederated Union Local No. 1. In 1968 an effort was made to decertify the Steel Workers as collective bargaining representatives for the production and maintenance workers at the New Castle plant through the National Labor Relations Board (NLRB). The petition was dismissed by the Regional Director, and requests for review were denied by the NLRB and the Court of Appeals for the Third Circuit. Shortly after this effort at decertification Local 4194 was placed under trusteeship pursuant to the constitution and bylaws of the United Steel Workers.

In 1969 Confederated Independent Union Local No. 1[2] filed a representation petition with the National Labor Relations Board in which it sought to have the Board conduct an election at the New Castle plant. The Regional Director dismissed this petition and the NLRB approved.

In July 1970 Confederated Independent Union Local No. 1 filed suit in the District Court for the Western District of Pennsylvania alleging the illegality of the trusteeship over Local 4194 and of the multi-plant unit and asking that the contract between United Steel Workers of America and the employer be declared invalid. The District Court dismissed the complaint for failure to state a cause of action and was affirmed by the United States Court of Appeals for the Third Circuit in *Confederated Independent Union v. Rockwell-Standard Co.*, 465 F. 2d 1137 (3d Cir. 1972).

The effect of these decisions by the NLRB and the courts was to bind the employer to bargain with the United Steel Workers of America on a multi-plant contract, and the employer so notified the employes of the New Castle plant. One of the notices, mailed in July 1971, included a copy of a decision of the NLRB upholding the dismissal by the Regional Director of another decertification petition filed in June 1971 on behalf of Confederated Independent Union Local No. 1. Nevertheless, persons purporting to act in behalf of Confederated Local No. 1 threatened to strike the New Castle plant if the employer persisted in ignoring it and negotiating with the United Steel Workers of America in connection with the Agreement due to expire on August 31, 1971. On August 14, 1971 the employer notified the employes of the New Castle plant

---

[2] It is contended by the appellants and seems to be the fact that 80% of the New Castle workers belonged to Confederated Independent Union No. 1 in August and September 1971.

that as it was bound under the law to negotiate with the United Steel Workers of America, any employes who engaged in a work stoppage in violation of the contract with the United Steel Workers of America would be subject to discipline, including discharge.

As noted, the term of the contract between the company and United Steel Workers of America by its terms ended midnight, August 31, 1971. Negotiations between the Company and the Steel Workers were conducted on that day, and at about 1:00 o'clock a.m. on September 1, 1971 a new three year contract was agreed upon. At about 9:45 o'clock p.m. on August 31, 1971, employes of the New Castle plant formed a picket line at the gates of the New Castle plant, and despite efforts of company personnel to induce the employes to continue work, the shift scheduled for 11:00 o'clock p.m. did not work. Picket signs for Confederated Independent Union Local No. 1 appeared on September 1, 1971 and production at the plant ceased. All of the seven appellants except Ray Bonzo were presented with an employe change of status notice dated September 1, 1971 suspending them for five days pending investigation as to whether disciplinary action was merited with respect to their participation in the strike. The plant remained unproductive by reason of the strike, and on September 5, 1971 these appellants and others in the same category of striking workers[3] were discharged for participating in a strike in violation of the collective bargaining agreement between the employer and the United Steel Workers of America.

Production at the plant did not resume until September 10, 1971. On September 16, 1971 the employer requested all other employes who had not yet returned to work to do so on September 20, 1971 or suffer

---

[3] Of the total of approximately 500 workers, about 72 were discharged in this group.

termination. Appellant Ray Bonzo was sent such a notice, did not return to work and, together with other employes in the same category,[4] was discharged for violation of the no strike clause of the renewed agreement, and for absence from work for five consecutive days.

It should be added to this recital of events that a Judge of the Federal District Court for the Western District of Pennsylvania issued an order on the afternoon of September 1, 1971, restraining the United Steel Workers of America and "all persons acting in concert or participation with it" from picketing or engaging in a strike or work stoppage at the plant.

Many of the terminated employes, including of course the appellants, filed claims for unemployment compensation. The Bureau determined that all of the workers discharged on September 5, 1971 were ineligible for unemployment compensation under Section 402(e) of the Unemployment Compensation Law,[5] because they engaged in a strike in violation of the collective bargaining agreement and that, therefore, their discharge was for wilful misconduct. Ray Bonzo and other employes terminated as of September 20, 1971 were found disqualified under Section 402 (b)(1) of the Law, 43 P.S. §802(b)(1), for voluntarily leaving work without cause of a necessitous and compelling nature.

Mass appeals were filed and consolidated for hearing. The referee made findings consistent with our recital and concluded that all of the claimants, including all of the appellants herein, were ineligible under Section 402(e) by reason of their willful misconduct in striking in violation of the collective bargaining

---

[4] About 17 employes were discharged in this group.

[5] Act of December 5, 1936, Second Ex. Sess., P. L. (1937) 2897, as amended, 43 P.S. §802(e).

agreement between their certified representative and the employer. The Board of Review affirmed.

It is the settled law of Pennsylvania that picketing and other participation in a work stoppage in contravention of the terms of a collective bargaining agreement is wilful misconduct under Section 402(e), 43 P.S. §802(e). *See Progress Manufacturing Co. v. Unemployment Compensation Board of Review*, 406 Pa. 163, 165, 176 A. 2d 632, 633 (1962); *Gutshall Unemployment Compensation Case*, 173 Pa. Superior Ct. 251, 98 A. 2d 257 (1953); *Kern Unemployment Compensation Case*, 172 Pa. Superior Ct. 324, 94 A. 2d 82 (1953); *Muldoon Unemployment Compensation Case*, 170 Pa. Superior Ct. 625, 90 A. 2d 599 (1952).

The appellants concede that they engaged in a strike. They contend, however, that the strike was not illegal because the company negotiated and concluded an agreement with the United Steel Workers, rather than recognizing and negotiating with the Local formed by them. They seem to depend in this argument on *Vrotney Unemployment Compensation Case*, 400 Pa. 440, 163 A. 2d 91 (1960), where our Supreme Court held that where an employer rejects its employes' offer to continue the status quo by working under the terms of an expiring contract pending final settlement of negotiations, the resulting work stoppage is a lockout rather than a strike. If we understand their argument, it is that the company's refusal to negotiate with them and its persistence in negotiating with the Steel Workers which the NLRB, affirmed by the Courts, had repeatedly certified as the bargaining unit, constituted a rejection of their offer to continue work. The record, however, contains no evidence that the employer refused to continue the terms of the preexisting contract during the one hour period between midnight, August 31, 1971, and 1:00 o'clock a.m., September 1, 1971. Indeed, it clearly demonstrates that the employer on many oc-

casions, including on the late evening of August 31, 1971, requested its employes to continue work. Further, it was the appellants who insisted that the status quo be changed; and that drastically. They threatened to and did strike because the company persisted in negotiating and entering into a contract with a union which the NLRB, supported by the courts, continued to certify as the only labor organization which could legally negotiate for its employes.

The appellants seem next to contend that their honoring the picket line established by the Confederated Independent Union Local No. 1, was lawful and therefore they were not guilty of misconduct. The difficulty with this argument is that all of the appellants were also members of Local 4194 of the United Steel Workers and bound by the contract entered into by the employer and the United Steel Workers, in their behalf. The fact that they may have formed or joined another Local did not render their strike activities contrary to the contract made by their certified union less unlawful. Indeed, if the appellants had been held ineligible for compensation under Section 402(d), 43 P.S. §802(d), on the ground their unemployment was the result of a labor dispute their action in honoring the picket line of their own Confederated Independent Union Local No. 1 would not remove their disqualification. *Curcio Unemployment Compensation Case*, 165 Pa. Superior Ct. 385, 68 A. 2d 393 (1949).

The appellants next argue that there is a conspiracy between the United Steel Workers and their employer to deprive them of their rights to bargain through the Confederated Independent Union Local No. 1, presumably again in support of the contention that they were not illegally striking but the victims of a lockout. Not only was this the assertion made in the equity suit dismissed by the District Court affirmed

by the Third Circuit Court of Appeals, this record contains no proof of such a conspiracy.

The appellants' final argument that the Bureau's action in denying their application for unemployment compensation benefits without a hearing denied them due process under *Goldberg v. Kelly,* 397 U.S. 254 (1970) is without merit. *See Koscherak v. Schmeller,* 363 F. Supp. 932 (S.D.N.Y. 1973) and *Silas v. Smith,* 361 F. Supp. 1187 (S.D.N.Y. 1973).

In summary, the appellants activities hereinbefore described engaged in for the purpose of accomplishing that which they had repeatedly been unable to accomplish through recourse to the NLRB and the courts, and undertaken by them in violation of existing contracts entered into in their behalf by their certified collective bargaining representative, was wilful misconduct, making them ineligible for unemployment compensation under Section 402(e), 43 P.S. §802(e).

### ORDER

AND NOW, this 6th day of September, 1974, the orders of the Unemployment Compensation Board of Review herein appealed are affirmed.