James P. Moran, Petitioner *v.* Commonwealth of
Pennsylvania, Unemployment Compensation
Board of Review, Respondent. Gould, Inc., Inter-
venor.

196

Argued March 5, 1979, before Judges CRUMLISH, JR., ROGERS and MACPHAIL, sitting as a panel of three.

*Jerome Balter,* for petitioner.

*William Dade,* Assistant Attorney General, for respondent.

*Mark M. Wilcox,* with him *Drinker, Biddle & Reath,* for intervenor.

OPINION BY JUDGE ROGERS, April 23, 1979:

James P. Moran has appealed a decision of the Unemployment Compensation Board of Review denying benefits pursuant to Section 402(e) of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(e) on the ground that he was guilty of willful misconduct. We affirm the Board's order.

Moran was employed by Gould, Inc. from January 23, 1968 until October 21, 1976 when he was discharged. At the time of his discharge, Moran was a union shop steward of Local 1612 United Auto Workers, the collective bargaining agent for Gould's production workers. On October 13, 1976, all except one of the 40 to 50 employees who worked in the department in which Moran was employed engaged in an illegal work stoppage in violation of a valid no-strike clause in Article XVI of the Collective Bargaining Agreement then in effect between Gould and the union.[1] On October 21, 1976, Moran was discharged.

After two hearings, the second on remand from the Board of Review, that body found that Moran had actively participated in the illegal work stoppage and that he had been discharged because of that participation; it concluded that his actions constituted willful misconduct.

Moran's first argument is that the Board's finding that he was discharged as a result of his participation in the work stoppage is not supported by substantial evidence. He says that he was discharged for other additional causes antedating the work stoppage. After examining the evidence in the record, we hold this contention to be without merit. Several exhibits, whose presence in the record is not disputed by Moran, and on one of which he indeed relies, support the Board's finding. Employer's Exhibit #3, a form used by Gould to record changes in employment status, gives as the reason for his discharge: "Violation of Article

---

[1] The pertinent portion of Article XVI provides:

Section 1. For the duration of this Agreement, and except for the failure of the Company or the Union to comply with the arbitration provisions of the Agreement, the Union agrees that it shall not call, sanction, or engage in any strike, slowdown or stoppage of work; and the Company agrees that it shall not cause or engage in any lockout.

XVI of the Collective Bargaining Agreement.'' On Employer's Exhibit #4, Moran's personnel record card, the entry is: "10-20-76 D Discharged—Violation of Article 16.''

Moran further argues that there is evidence in the record that his participation in the work stoppage was, however, not the only reason for his discharge. His reference is to Employer's Exhibit #5, a document entitled "Man—Job Progress Report.'' This contains the statement that "As a result of Mr. Moran's actions in this case, and in light of Mr. Moran's past actions as an employee and a Shop Steward which indicate repeated violations of the Collective Bargaining Agreement, other Agreements & Company policy, Mr. Moran will be discharged effective October 21, 1976.'' This reference far from contradicting the fact that Moran was discharged for participating in an unlawful strike reaffirms it by saying that he was discharged as a result of it. The other reasons, as the form states, only shed light on the central cause for the discharge.

Moran also argues that Gould's failure to discipline other employees who participated in the work stoppage is evidence that Gould did not consider the work stoppage to be significant and that this consideration should impel the inference that in fact Moran's participation in the work stoppage was not the primary reason for his discharge. We cannot fault the Board for not inferring that Gould's failure to discharge 40 or 50 of its production employees is evidence that Gould viewed the work stoppage as insignificant; and we are unaware of anything other in the record indicative of Gould's general view of the work stoppage. There is evidence, however, of how his employer viewed Moran's activities. He, unlike the other employees was a shop steward obligated by the terms of the collective bargaining agreement to attempt to halt the illegal work stoppage. Section 3 of Article XVI of

the Collective Bargaining Agreement provides, in pertinent part:

> In the vent of an illegal, unauthorized or uncondoned strike, work stoppage, interruption or impeding of work, the Local and International Union *and its officers* shall immediately take positive and evident steps to have those involved cease such activity. (Emphasis added.)

Thus, Moran clearly had a special responsibility not resting on the rank and file of production workers. Gould could reasonably have concluded in the circumstances that only Moran's actions were so serious as to warrant discipline.

The fact that Moran was a shop steward charged with special responsibilities in the event of an illegal work stoppage sets his case apart from those of other employees and justified the application of a different standard in judging Moran's conduct. This consideration disposes of Moran's argument based on the holding of *Woodson v. Unemployment Compensation Board of Review,* 461 Pa. 439, 336 A.2d 867 (1975), that unemployment compensation benefits may not be denied to employees discharged for being excessively absent and tardy where the facts were that the employer required a stricter standard of conduct of its discharged black employees than it did of white employees who were not discharged although equally as guilty of absenteeism and tardiness.

Moran's next argument is erected on the case of *Frei v. Unemployment Compensation Board of Review,* 5 Pa. Commonwealth Ct. 190, 289 A.2d 769 (1972). There we held that three workers with good employmeent records who, while their own union was not on strike, refused on one day and as a matter of conscience to cross the picket line of another union local, were not guilty of willful misconduct. In the course of the *Frei* opinion it was noted that the work-

ers' conduct was protected under the Labor Management Relations Act of 1947, and the comment was made that this circumstance carried persuasion. Of course the instant case is quite different. We were at pains in *Frei, supra,* to observe that the claimants' actions as individuals were not violative of the no-strike clause of the collective bargaining agreement which prohibited only action of union member employees taken in concert. Moran's actions were in clear violation of the collective bargaining agreement. It is true that in *Precision Castings Company,* 233 N.L.R.B. No. 35 (1977), the Labor Relations Board held that it was unfair labor practice on the part of an employer selectively to discipline union officials for engaging in an unauthorized strike. We are also mindful that an Administrative Law Judge has declared, after finding that Moran had indeed participated in an unlawful work stoppage at Gould's, that his discharge was selective and therefore an unfair labor practice on Gould's part. However, no argument is needed to emphasize the difference between this unemployment compensation case where the worker's conduct is under scrutiny and the unfair labor charge case where the employer's conduct is under judgment. Hence, the N.L.R.B. decisions just referred to do not stand for the proposition that the workers' activities were not misconduct but only that the employer's action in selectively disciplining union officers violated the law's policy of protecting workers' right to organize collectively. Furthermore, ''[i]t is the settled law of Pennsylvania that picketing and other participation in a work stoppage in contravention of the terms of a collective bargaining agreement is wilful misconduct under Section 402(e), 43 P.S. §802(e).'' *Miller v. Unemployment Compensation Board of Review,* 15 Pa. Commonwealth Ct. 171, 177, 324 A.2d 793, 796 (1974). Just as two wrongs do not make a right, an employer's

wrongful conduct under one statute cannot make right an employee's wrongful conduct under another.

Order affirmed.

ORDER

AND Now, this 23rd day of April, 1979, the order of the Unemployment Compensation Board of Review dated March 24, 1978 is affirmed.

