Birdsboro Corporation, a Subsidiary of Pennsylvania Engineering Corporation, Petitioner v. Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent. Robert T. Pinkasavage et al., Intervenors.

Argued April 10, 1981, before Judges ROGERS, CRAIG and PALLADINO, sitting as a panel of three.

*Henry J. Wallace, Jr.,* with him *Stephen J. Stabler, Reed, Smith, Shaw & McClay,* for petitioner.

*Charles G. Hasson*, Associate Counsel, with him *Richard Wagner*, Counsel, and *Richard L. Cole, Jr.*, Chief Counsel, for respondent.

No appearance for intervenors.

OPINION BY JUDGE CRAIG, June 4, 1981:

An employer, Birdsboro Corporation, has appealed from decisions of the referee and Unemployment Compensation Board of Review granting benefits to claimants, four supervisors who, according to the employer, were discharged for willful misconduct and therefore ineligible for benefits under Section 402(e) of the Unemployment Compensation Law (Act).[1]

The employer company produces steel castings, fabrications and machine products. Certain supervisors in the company had incorporated the Birdsboro Foundry-Fabrication and Production Foreman's Guild, Local No. 1 (Guild); the four claimants are the Guild's president, vice president and two of its directors.

The employer refused to recognize the Guild as a labor organization, and the National Labor Relations Board agreed, finding that Guild members are not "employees" and the Guild is not a labor organization.

Continuing to demand recognition from the company, about forty-six Guild members, including the claimants, did not report to work during the first twenty-six days of June, 1979.

On June 4, the employer sent a written warning to all the supervisors not working, including the claimants, that failure to report to work could result in disciplinary action, including discharge.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e).

On June 26, the claimants advised that they would be returning to work the following day. The employer then informed the claimants that they were fired. On the following day, the employer gave each claimant a letter discharging him for (1) unauthorized absence and (2) discouraging others from working. In addition, refusal to meet with the company's executive vice president, when requested, was assigned as another reason with respect to two of them, and discouragement of truck entry to the plant was also assigned as to one. Unsatisfactory performance of duties was also listed with respect to two claimants.

However, the referee's findings (adopted by the board after a rehearing) confirm that the employer permitted forty of the supervisors to return to work. Only six, including the claimants, were discharged.

In analyzing the remaining facts, we note that, at the inception of the hearings, the employer representatives and claimant's attorney stipulated and agreed that "the claim or the appeal of . . . Pinkasavage will govern the ruling of the Appeal of . . . Beahn . . . Madara . . . and under the appeal of . . . Scatchard. . . ."

The charges, evidence and findings as to the token claimant Pinkasavage can be tabulated, in comparison to the forty supervisors not fired, as follows:

| CHARGES | TOKEN CLAIMANT PINKASAVAGE | FORTY NOT FIRED |
|---|---|---|
| *Absent 26 days;* | | |
| *Picketed* | Established | Established |
| *Discouraged others from working* | Not found; Employer testimony negates.[2] | No finding |

---

[2] The employer's witness on the point did not attest to any literature distribution (or other such action) by Pinkasavage (or Madara or Scatchard).

| | | |
|---|---|---|
| *Refused to meet with company's vice president* | Not charged | No finding |
| *Impeded truck entry* | Not charged | No finding |
| *Unsatisfactory past work* | Finding negates; Evidence conflicting[3] | No finding |

Thus, with respect to lead claimant Pinkasavage, the evidence of record and, where the evidence conflicts, the finding of the referee, places the lead claimant in precisely the same light as the forty supervisors who were not terminated. Established and admitted is the fact that all the supervisors, including the forty not terminated, were absent for twenty-six days and engaged in picketing. Of course, such unauthorized absence clearly constituted willful misconduct on the part of all forty-six supervisors. (In that respect, the referee's finding, that the ''claimant at no time acted unfavorable [sic] toward the employer,'' cannot stand.)

Even without reliance upon the lead claimant stipulation, a parity between the remaining three claimants and the other forty supervisors is also apparent. Claimant Scatchard is on the same footing as Pinkasavage because Scatchard was charged only with absence and discouraging others, and there was no evidence whatsoever against him on the latter point.

Beahn and Madara were both charged with discouraging others from working and refusing to meet with the employer's vice president. However, the

---

[3] There was evidence that Pinkasavage had once received an oral reprimand, but had also received favorable formal evaluations for salary increases.

absence of any findings by the referee to sustain the employer's burden as to Beahn and Madara is understandable when the record is scrutinized. As to discouraging others, the employer's testimony was only that Beahn passed out Guild literature and that Madara presented a picket sign to another supervisor at his home. On the charge of refusal, the evidence was that Beahn and Madara, with their attorney, came to the company office, but a standoff ensued because the vice president would not engage in discussion with his attorney present, and the claimants would not do so without him. The evidence on the one remaining charge, against Beahn, that he impeded the entry of a truck into the plant, was presented as a secondhand report by a security head and denied by Beahn.

Hence the record and findings establish only the one category of willful misconduct—unauthorized absence—with respect to *all* the supervisors identified with the Guild.[4]

Thus, the question presented is clear: Where an employer, in disciplining a group of supervisory employees makes a distinction by discharging certain of

---

[4] Clearly, mere participation, such as picketing, in an illegal strike constitutes willful misconduct. *Moran v. Unemployment Compensation Board of Review*, 42 Pa. Commonwealth Ct. 195, 400 A.2d 257 (1979); *Unemployment Compensation Board of Review v. National Aluminum Company*, 22 Pa. Commonwealth Ct. 519, 349 A.2d 527 (1975); *Miller v. Unemployment Compensation Board of Review*, 15 Pa. Commonwealth Ct. 171, 324 A.2d 793 (1974); *Progress Manufacturing Co., Inc. v. Unemployment Compensation Board of Review*, 406 Pa. 163, 176 A.2d 632 (1962). All those decisions, however, determined the striker work stoppage to be illegal because it was in violation of a subsisting collective bargaining agreement. Here, as stressed by the company itself, no collective bargaining agreement existed, nor could one exist, so that the stoppage here cannot be regarded as an illegal strike or labor union action.

the employees solely, according to the evidence, on the basis of the leadership positions conferred upon them in the group formed by the employees, can the discharged claimants be rendered ineligible on willful misconduct grounds?

The Pennsylvania Supreme Court has clearly held that an employee subjected to a discriminatory standard with respect to absence will not be found to have been discharged for willful misconduct on that basis. *Woodson v. Unemployment Compensation Board of Review,* 461 Pa. 439, 336 A.2d 867 (1975). The principle is not affected by *Moran v. Unemployment Compensation Board of Review,* 42 Pa. Commonwealth Ct. 195, 400 A.2d 257 (1979), where a union steward was discharged for participating in an illegal strike, in violation of a no-strike clause in a collective bargaining agreement, while other striking employees were retained; we upheld the employer's distinction on the ground that the steward, as a union officer, had an express contractual obligation to the company to prevent illegal strikes. Here, with no collective bargaining agreement in existence, these claimants, although officers of their own organization, had no obligation toward the employer apart from that obligation which all the supervisors owed to their employer.

Therefore, we are in agreement with the conclusion of the referee adopted by the board, that each "termination falls squarely within the area of discrimination."

Accordingly, the decision is affirmed.

ORDER

AND Now, June 4, 1981, the decision of the Unemployment Compensation Board of Review dated January 16, 1980, Decision No. B-179770, governing the appeals of Robert T. Pinkasavage, B-79-2-I-466,

Richard L. Beahn, B-79-2-I-451, Raymond P. Madara, B-79-2-I-462, and Sidney M. Scatchard, B-79-2-I-474, is hereby affirmed.