West Penn Power Company, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued May 6, 1981, before Judges CRAIG, MAC-PHAIL and PALLADINO, sitting as a panel of three.

*Drew J. Kovalak*, for petitioner.

*John T. Kupchinsky*, Associate Counsel, with him, *Richard Wagner*, Counsel, and *Richard L. Cole, Jr.*, Chief Counsel, for respondent.

OPINION BY JUDGE PALLADINO, November 12, 1981:

West Penn Power Company (West Penn) appeals here from a decision and order of the Unemployment

Compensation Board of Review (Board) which reversed a referee's decision denying benefits to Frank R. Zubal on the ground that he had been discharged from his employment because of "willful misconduct." We reverse and remand.

Claimant was last employed as a lineman for West Penn where he also served as Vice President of union local 102B of the Utility Worker's Union of America. On November 15, 1979, Claimant's last day of work, Claimant was working with six other linemen on a series of utility poles when the crew's foreman decided to temporarily suspend work because of a passing snow squall. Shortly thereafter, the snow turned into rain, and the foreman decided that it was safe to resume work. Claimant and his co-workers, however, disputing this assessment of the weather conditions, refused to return to work on the poles, and were sent home. Claimant and Frank Pattock, the President of union local 102B, were subsequently dismissed for their roles in this incident, and the other five linemen involved, none of whom were union officials, were subsequently suspended for one week.

After applying unsuccessfully to the Bureau, now Office, of Employment Security (Bureau) for unemployment compensation benefits, Claimant appealed to a referee who conducted a hearing on his claim on January 7, 1980. At this hearing, a representative from West Penn testified that Claimant and Frank Pattock had been discharged because of (1) their failure to return to work on the poles and (2) their failure to meet their obligations under Section XXX of the parties' collective bargaining agreement which provides in pertinent part:

> [I]f any employees engage in any strike, slow-down, or refusal to carry out work assignments during the term of this Agreement, the Union and its officers will forthwith make a sincere,

active effort to have work resumed at a normal rate .... However, should such action on the part of the Union and its officers fail to end such a strike, slowdown, or work refusal, it is agreed that the Company shall have the unqualified right to discipline or discharge employees participating in or encouraging such violations.

Claimant, for his part, conceded that he had not encouraged the men to work on the poles, but argued that he felt he could not do so in good conscience since he considered the working conditions to be unsafe. The referee subsequently concluded that Claimant's failure to order his co-workers back to work constituted "willful misconduct," and affirmed the Bureau's denial of benefits.

On appeal, the Board reversed the referee and awarded benefits. In its decision and order, the Board found as a fact that Claimant had been ordered to "climb the poles," and that he had refused to do so since he considered them to be "too slippery." The Board then concluded (1) that Claimant's failure to return to work on the poles didn't constitute willful misconduct since only the union officials involved in the work refusal had been dismissed for their roles in the incident, and (2) that Claimant's failure to order the other men back to work on the poles didn't constitute willful misconduct since Section XXX of the parties' collective bargaining agreement "was not intended to apply to a situation where workers or a union official feels that it is unsafe to continue working ...." The present appeal followed.

This Court has defined "willful misconduct" as "(1) the wanton and wilful disregard of the employer's interest, (2) the deliberate violation of rules, (3) the disregard of standards of behavior which an employer can rightfully expect from his employe, or (4) negligence which manifests culpability, wrongful in-

tent, evil design, or intentional and substantial disregard for the employer's interests or the employee's duties and obligations.'' *Kentucky Fried Chicken of Altoona, Inc. v. Unemployment Compensation Board of Review,* 10 Pa. Commonwealth Ct. 90, 97, 309 A.2d 165, 168-69 (1973).

The initial burden of proving "willful misconduct" rests with the employer, *Semon v. Unemployment Compensation Board of Review,* 53 Pa. Commonwealth Ct. 501, 417 A.2d 1343 (1980), and where, as here, the party with the burden of proof did not prevail below, "our scope of review is limited to determining whether the findings of fact are consistent with each other and with the conclusions of law and whether they can be sustained without a capricious disregard of competent evidence.'' *Penn Photomounts, Inc. v. Unemployment Compensation Board of Review,* 53 Pa. Commonwealth Ct. 407, 410, 417 A.2d 1311, 1313 (1980).

Before this Court, West Penn alleges that the Board improperly concluded that Claimant did not have any duty to order his co-workers back to work. We agree.

In the present case, the Board, in reversing the referee, found as a matter of fact that Section XXX of the parties' collective bargaining agreement placed no duty on Claimant to order his co-workers back to work where he felt that the working conditions were unsafe. After carefully reviewing the record, however, we note that both Claimant and Frank Pattock testified before the referee (1) that the foreman had the sole authority to determine when the weather conditions were inclement under Section IV of the collective bargaining agreement and (2) that they had a duty under Section XXX of the collective bargaining agreement to order the men back to work. Although Claimant did testify before the referee that

he felt that he couldn't order the men back to work since he considered the working conditions to be unsafe, this testimony would not support a finding that Claimant did not have a duty to order the men back to work, but instead would simply support a finding that Claimant was justified in refusing to fulfill his duties. Accordingly, we believe that the Board's interpretation of Section XXX was in capricious disregard of the evidence in the record, and must be reversed.

West Penn next alleges that Claimant's failure to order the men back to work constituted ''willful misconduct.'' Since there were not sufficient findings made below to enable us to resolve this question, however, we must remand.

A finding that an employee failed to fulfill his duties under the terms of a collective bargaining agreement can support a conclusion that a claimant was dismissed because of willful misconduct. *Moran v. Unemployment Compensation Board of Review*, 42 Pa. Commonwealth Ct. 195, 400 A.2d 257 (1979). ''In reaching this conclusion, however, the Board must examine *all* the justifications the claimant advances for his refusal, and make findings of fact resolving them.'' *Hughes v. Unemployment Compensation Board of Review*, 40 Pa. Commonwealth Ct. 422, 425, 397 A.2d 494, 496 (1979) (emphasis in original) (citations omitted).

In the present case, the record shows that if the crew had returned to work on the poles they would have had access to three bucket trucks which would have obviated the necessity of climbing the poles. Conflicting testimony was presented before the referee, however, on the questions of whether the weather conditions made working with bucket trucks unsafe, and whether one of the bucket trucks available was unsafe to operate. Since it is necessary to have

these factual issues resolved before a determination can be made as to whether Claimant's actions were justified, we will enter the following

ORDER

AND Now, November 12, 1981, the Decision and Order of the Unemployment Compensation Board of Review, Decision No. B-181892, dated March 12, 1980, is reversed, and the record is hereby remanded for further proceedings consistent with this opinion.