703 A.2d 452

CATERPILLAR, INC., Appellant,

v.

UNEMPLOYMENT COMPENSATION BOARD OF REVIEW,
Wilson Hostetter, Intervenor, Appellee.

CATERPILLAR, INC., Appellant,

v.

UNEMPLOYMENT COMPENSATION BOARD OF REVIEW,
Thomas E. Heath, Intervenor, Appellee.

CATERPILLAR, INC., Appellant,

v.

UNEMPLOYMENT COMPENSATION BOARD OF REVIEW,
Robert G. Hildebrand, Jr., Intervenor, Appellee.

CATERPILLAR, INC., Appellant,

v.

UNEMPLOYMENT COMPENSATION BOARD OF REVIEW,
Donald J. Coddington, et al., Intervenors, Appellee.

Supreme Court of Pennsylvania.

Argued April 29, 1997.

Decided Nov. 20, 1997.

116

Bruce D. Bagley, Harrisburg, Eric N. Athey, Lancaster, for Caterpillar, Inc.

Clifford F. Blaze, Harrisburg, for Unemployment Compensation Bd. of Review.

William W. Thompson, II, Harrisburg, Daniel G. Orfield, Washington, DC, Gary L. Snyder, York, for Intervenors.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

*OPINION OF THE COURT*

NEWMAN, Justice.

Caterpillar, Inc. (Employer) appeals from the award of unemployment compensation benefits to Donald Coddington, et al., Thomas Heath, Robert Hildebrand, Jr., and Wilson Hostetter (collectively, Claimants)[1] pursuant to the Unemployment Compensation Law, Act of December 5, 1936, P.L. (1937) 2897, as amended, 43 P.S. § 751, et seq. For the reasons set forth below, we affirm the Order of the Commonwealth Court.

*FACTS AND PROCEDURAL HISTORY*

During the spring of 1992, Caterpillar was in the process of negotiating a new collective bargaining agreement with the United Automobile, Aerospace and Agricultural Implement Workers of America, Local 786 (Union). Claimants are members of the Union. On April 1, 1992, newspapers in York,

---

1. The Unemployment Compensation Board of Review consolidated nineteen claims underlying this matter into four separate appeals: Donald Coddington, et al., Robert Hildebrand, Jr.; Wilson Hostetter; and Thomas Heath. The Commonwealth Court further consolidated these appeals and issued one opinion.

Pennsylvania and Peoria, Illinois, reported that Donald V. Fites (Fites), Caterpillar's Chairman and Chief Executive Officer, had warned that workers on strike in Caterpillar's Midwestern plants would be permanently replaced if they did not return to work. The following day, Ken Myers (Myers), an employee at Caterpillar's York, Pennsylvania plant, wore a T-shirt to work bearing the phrase "PERMANENTLY RE-PLACE FITES". Caterpillar immediately discharged Myers because it determined that the slogan contravened its policy against personal attacks on fellow employees. Later the same day, Caterpillar reinstated Myers without a loss of pay with the understanding that Caterpillar preferred that he not display that slogan. The Regional Director of the National Labor Relations Board (NLRB) filed an unfair labor practice complaint against Caterpillar for its actions against Myers.

Because of the incident, the Union issued a newsletter to its members explaining the NLRB's complaint. In response, Caterpillar distributed the following letter dated September 30, 1992, to all employees:

Dear Fellow Employee:

A recent UAW News Release, in our judgment, misrepresents the law and we want to make sure our employees understand the Company's position and do not get into trouble in reliance upon the UAW's misrepresentation.

Recently, the Regional Director of the Baltimore office of the National Labor Relations Board issued a complaint against Caterpillar's York Facility because, among other allegations, Caterpillar prohibited an employee from wearing a T-shirt that made specific reference to Don Fites. The UAW News Release stated that "one effect of the NLRB determination" is that the wearing of such T-shirts "constitutes an expression protected under the law."

We disagree and all employees should be aware of two (2) points:

*First,* a complaint issued by a local regional director is not an "NLRB determination." It is just a "complaint"—nothing more. . . .

*Second* the Company stands by its position that it is not going to permit T-shirts, buttons, or other items that attack or insult individual persons, whether they are hourly employees, supervisors, managers, local Union leaders, the president of the UAW or even the chairman of Caterpillar.

*The workplace is for work* and we must try to maintain a businesslike and professional atmosphere. The Company feels strongly that once any personalized attacks in the workplace are permitted, no matter who is the subject, a significant potential for in-plant confrontations and inharmonious working relationships will develop.

We expect all employees to avoid in-plant T-shirts, buttons, and other items that display personal attacks on Union leaders or fellow employees of Caterpillar, regardless of position.

Reproduced Record at 202a (emphasis in original).

Subsequently, on November 24, 1992, 115 of the 1,400 employees in the York plant wore T-shirts to work imprinted with the following words: "The NLRB's complaint against Caterpillar alleges that the company's discharge and harassment of Ken Myers for wearing a 'PERMANENTLY RE-PLACE FITES' sign violated the Act." R.R. at 81a. Caterpillar immediately notified the employees that it considered the T-shirts to violate the company policy against personal attacks on fellow employees and offered them the options of a) removing the shirts, b) wearing them turned inside-out, or c) covering the statement with solid tape. In response, the Claimants recited the following prepared statement:

Section 7 of the National Labor Relations Act guarantees my right to support my Union and to engage in concerted activities for the purposes of collective bargaining and mutual aid and protection. I believe your order that I remove my T-shirt interferes with my Section 7 rights and is unlawful. If you take any action against me for this, I will report it to the Union's lawyers and request that a charge

be filed on my behalf with the National Labor Relations Board to enforce my rights.

Board's Decision, Finding of Fact No. 11.

Sixteen of the "offending" employees refused to comply with the employer's request, and the employer suspended them. Three other employees initially complied with the request but subsequently wore or displayed the same slogan or a variation of it on company property: Claimant Hildebrand wore the same T-shirt on December 1, 1992, but covered the "E" in "FITES" and claimed he was protesting the "fits" and tantrums that had taken place at another Caterpillar facility; Claimants Hostetter and Heath prominently displayed their T-shirts on December 9, 1992 and December 15, 1992, respectively, in their vehicles while parked in the company lot. Caterpillar suspended Claimants Hildebrand, Hostetter and Heath, each for a total of one to two weeks.

Claimants applied for unemployment compensation benefits with the Office of Employment Security (OES) for the period of suspension. The Regional Director of the NLRB also filed a separate complaint with the NLRB against Caterpillar stemming from these suspensions. *See Caterpillar, Inc.*, 321 N.L.R.B. 1178, 1996 WL 501498 (1996).[2] OES denied benefits on the grounds that Caterpillar discharged Claimants for willful misconduct, 43 P.S. § 802(e). The Unemployment Compensation Referee reversed, concluding that the actions did not constitute willful misconduct. The Unemployment Compensation Board of Review (Board) affirmed.

2. A panel of the NLRB held that Caterpillar "violated Section 8(a)(1) [of the Act] by prohibiting its employees from displaying various slogans including 'Permanently Replace Fites' and any derivative thereof, and that [Caterpillar] violated Section 8(a)(3) [of the Act] by enforcing this rule." *Caterpillar, Inc.*, 321 N.L.R.B. at 1178. The NLRB further found that displaying this slogan was protected union activity. It instructed Caterpillar to cease and desist from applying the rule to prohibit any insignia bearing the words "Permanently Replace Fites" or any variation of it, and further instructed Caterpillar to fully compensate those employees whom they suspended for any loss of earnings they suffered. This decision is pending on appeal before the United States Court of Appeals for the Seventh Circuit.

Caterpillar filed a request for reconsideration, which the Board granted. The Board reaffirmed the award of benefits after determining that the T-shirts did not violate Caterpillar's work rule because the slogan did not attack Fites' character or personal attributes, but instead voiced their support for the NLRB complaint. Additionally, the Board determined that to deny Claimants benefits because of the words printed on the T-shirts would violate their First Amendment right to free speech.[3] Caterpillar then appealed to the Commonwealth Court.

The Commonwealth Court affirmed the Board's decision, holding that Claimants did not commit willful misconduct within the meaning of the Unemployment Compensation Law. It concluded that the T-shirt demonstrated the employees' support of the NLRB complaint against Caterpillar and their opposition to the company's decision to permanently replace striking workers in the Midwestern plants. Furthermore, because the shirts contained no provocative, vulgar or defamatory statements about Fites and did not attack his personal character, the court found no violation of Caterpillar's policy.[4]

## DISCUSSION

 Section 402(e) of the Unemployment Compensation Law provides the following:

§ 802. Ineligibility for compensation.

An employe shall be ineligible for compensation for any week—

. . . .

3. Because we conclude that the T-shirts did not violate the company policy, we do not reach the constitutional issue.

4. Senior Judge Silvestri dissented, indicating that Caterpillar had a legitimate interest in attempting to avoid in-plant confrontations by promoting a policy which prohibited personal attacks on fellow employees, Union leaders or company officials. Judge Silvestri further emphasized that the company specifically advised the employees of the rule and informed them that the slogan "Permanently Replace Fites" or any derivative of it constituted a violation. Therefore, he opined that Claimants' actions must be construed as a clear violation of a reasonable work rule and this violation amounts to willful misconduct.

(e) In which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work . . .

43 P.S. § 802. A determination of whether certain activity constitutes "willful misconduct" is a question of law reviewable by this Court. *Rossi v. Unemployment Compensation Board of Review,* 544 Pa. 261, 676 A.2d 194 (1996).[5] Willful misconduct is a) wanton or willful disregard for an employer's interests; b) deliberate violation of an employer's rules; c) disregard for standards of behavior which an employer can rightfully expect of an employee; or d) negligence indicating an intentional disregard of the employer's interest or an employee's duties or obligations. *County of Luzerne v. Unemployment Compensation Board of Review,* 148 Pa.Cmwlth. 473, 477, 611 A.2d 1335, 1337 (1992). The employer bears the burden of proving that the claimant engaged in willful misconduct. *Id.*

If the employer alleges willful misconduct because the claimant violated a work rule, the employer must prove both the existence of the rule and its violation. *Id.* at 477, 611 A.2d at 1338. We then decide if the violation constituted willful misconduct. In doing so, we examine whether "the rule or policy is reasonable in light of all the circumstances and if so, whether the employee [had] good cause to violate the rule or policy." *Spirnak v. Unemployment Compensation Board of Review,* 125 Pa.Cmwlth. 354, 357, 557 A.2d 451, 453 (1989). Reasonableness is determined by whether the employer's application of the rule under the circumstances is fair, just and appropriate to pursue a legitimate interest. *Id.*

There is no dispute that Caterpillar had a work rule prohibiting "T-shirts, buttons, or other items that attack or insult individual persons, whether they are hourly employees, supervisors, managers, local Union leaders, the president of the UAW or even the chairman of Caterpillar." R.R. at 202a. The purpose of this rule was to avoid in-plant confrontations

---

5. Our review is limited to determining whether the findings of fact are supported by substantial evidence and whether there was a violation of the constitution or agency procedure of law. *Id.*

and inharmonious working conditions. Relying on *County of Luzerne*, Caterpillar argues that because it specifically advised the employees that it would strictly enforce this rule, and that it considered the "Permanently Replace Fites" language to violate this rule, Claimants' actions constituted willful misconduct.[6] However, even where the employer specifically advises employees that it will strictly enforce a work rule, the application must nevertheless be reasonable, otherwise a violation of the rule will not constitute willful misconduct. *Spirnak*.

■ Therefore, we turn to the question of whether Caterpillar's application of the rule under these circumstances was fair, just and appropriate to achieve a legitimate purpose. *Spirnak*. First, we are cognizant of the federal rights afforded to employees pursuant to the National Labor Relations Act (the Act), 29 U.S.C. § 151 et seq. Section 7 of the Act, gives employees the right "to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection...." 29 U.S.C. § 157. Employers are prohibited from interfering with an employee's right to exercise those privileges. 29 U.S.C. § 158.

■ In *Frei v. Unemployment Compensation Board of Review*, 5 Pa.Cmwlth. 190, 289 A.2d 769 (1972), the Commonwealth Court held that although NLRB rulings are not binding on our courts, a determination that the Act protects the claimant's activity is persuasive when considering whether the

**6.** The case of *County of Luzerne* is clearly distinguishable. In that case, a court-appointed judicial employee was specifically advised that if she circulated a petition for nomination to an elected political position, she would be discharged pursuant to the Pennsylvania Supreme Court Guidelines for Judicial Administration, 82 Judicial Administration Docket No. 1, § 3. The claimant nevertheless pursued her nomination for district justice and was discharged. The Commonwealth Court concluded that she was ineligible for benefits because her unemployment was due to willful misconduct, 43 P.S. § 802(e). *County of Luzerne* involved an objective, non-discretionary judicial guideline, as opposed to the employer-promulgated, subjective policy found in the case *sub judice*. Thus, we find that this case is not dispositive because there was no question in *County of Luzerne* of whether the application of the "rule" was reasonable.

same behavior constitutes willful misconduct pursuant to the Pennsylvania Unemployment Compensation Law.[7] Thus, although we do not decide the issue of whether Caterpillar engaged in an unfair labor practice in violation of the Act, 29 U.S.C. § 158, the NLRB ruling persuades us that the same conduct that underlies the instant case, was protected union activity. *Caterpillar*, 321 N.L.R.B. 1178 (1996). The NLRB also ruled that Caterpillar violated the Act by prohibiting the employees from displaying various statements, including "Permanently Replace Fites" because it was a showing of support for the union position against the permanent replacement of striking workers. *Id.*

Thus, for purposes of determining whether Caterpillar's application of its rule was reasonable under these circumstances, we recognize that employees have the right to show both their support for union activity and their opposition to a company policy. The full text of the T-shirt reads as follows: "The NLRB's complaint against Caterpillar alleges that the company's discharge and harassment of Ken Myers for wearing a 'PERMANENTLY REPLACE FITES' sign violated the Act." Caterpillar's rule prohibits "personalized attacks" on fellow employees. The slogan, however, demonstrates the Claimants' support of the NLRB complaint and their opposition to the company's policy of permanently replacing striking workers in the Midwestern plants. It is not offensive, vulgar, or threatening towards Fites, nor does it personally criticize or attack Fites. Furthermore, applying the rule to prohibit

---

7. We note that the Act does not protect all activity conducted in the course of labor negotiations. *See, e.g., Williams v. Unemployment Compensation Board of Review,* 109 Pa.Cmwlth. 329, 531 A.2d 88 (1987). In *Williams,* the employer terminated Williams, a union representative, for using profanity during a union-management discussion at which Williams was representing two other employees. The Commonwealth Court, in upholding the denial of benefits, stated, "Insubordination, the use of vulgar language, or any other willful misconduct is not excused simply because it occurred while the employee was engaging in union activities." *Id.* at 333, 531 A.2d at 89–90. However, *Williams* is distinguishable because there, the employer enforced its rule prohibiting profanity that happened to occur during a union-management discussion; whereas here, Caterpillar enforced its rule to prohibit a showing of support for the union.

this statement will not reasonably achieve Caterpillar's goal of avoiding in-plant confrontations. Consequently, despite the reasonableness of the work rule itself, its application under these circumstances was not fair, just and appropriate because it restrained Claimants' right to support a union position. *Spirnak; Frei.* Claimants' actions, thus, did not amount to willful misconduct disqualifying them for unemployment compensation benefits.[8]

Accordingly, Claimants are entitled to unemployment compensation benefits for the period of their suspension.[9] We affirm the Order of the Commonwealth Court.

CASTILLE, J., files a dissenting Opinion in which NIGRO, J., joins.

8. We likewise reject Caterpillar's argument that its prohibition against personalized attacks on fellow employees fell within its authority to regulate the dress code of its employees. Rules controlling the dress code in the workplace have been upheld in Pennsylvania provided they are "reasonably related to the employer's legitimate purpose." *Gradwell v. Unemployment Compensation Board of Review,* 71 Pa.Cmwlth. 39, 453 A.2d 1090 (1983). Caterpillar's policy was clearly aimed at the content of the slogans contained on the clothing, not the clothing itself. *Compare Metropolitan Edison Co. v. Unemployment Compensation Board of Review,* 146 Pa.Cmwlth. 648, 606 A.2d 955 (1992) (upholding the company's policy regulating employee appearance and requiring employees to shave facial hair to become "respirator qualified"); and *Gradwell* (upholding a dress code policy that mandates that female employees wear a company-issued uniform tunic and pants). Although this regulation may be reasonably related to the company's policy of avoiding confrontations and inharmonious working conditions if it is applied to prohibit, for example, inflammatory, insulting, or obscene language, the statement contained on these particular shirts was not inciting nor likely to promote confrontations. Again, the question reverts to the reasonableness of the application of the rule to the given situation.

9. We recognize that the NLRB decision, which orders Caterpillar to make the Claimants whole, is pending on appeal. Although it would initially appear that the Claimants could receive a windfall from an award of unemployment compensation benefits as well as back pay if the Seventh Circuit upholds the NLRB decision, this situation is addressed by the Unemployment Compensation Law, 43 P.S. §§ 864 and 874. The following summary is instructive:

Where a claimant receives reinstatement with back pay ... under any labor, discrimination or other employment law, [he or she] is obliged to repay unemployment compensation benefits received for the period covered by the back wages. [43 P.S. 874(b)(3).] Alternatively, if the

CASTILLE, Justice, dissenting.

The majority holds that Claimants' (the Intervenors) actions did not constitute willful misconduct and that Claimants are therefore entitled to unemployment compensation benefits because their violation of a work rule prohibiting employees from wearing T-shirts attacking or insulting any individual working for appellant, Caterpillar, Inc., did not constitute willful misconduct since the T-shirts which resulted in Claimants' suspensions did not personally attack Caterpillar's Chairman and Chief Executive Officer and the rule unfairly restrained Claimants' ability to support a union position. Because the facts demonstrate that Claimants were aware of the work rule and that Claimants deliberately violated the work rule (indeed, flaunted the work rule), I believe that Claimants engaged in willful misconduct which made them ineligible to receive unemployment compensation benefits for their period of suspension. Thus, I respectfully dissent.

As correctly noted by the majority, Section 402(e) of the Unemployment Compensation Law precludes claimants who engage in willful misconduct from receiving unemployment compensation benefits. While Section 402(e) does not define "willful misconduct," this Court has defined willful misconduct as:

an act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has a right to expect of an employee, or negligence indicating an intentional disregard of the employer's interest or of the employee's duties and obligations to the employer.

*Myers v. Unemployment Compensation Board of Review,* 533 Pa. 373, 378, 625 A.2d 622, 625 (1993). Caterpillar, as the employer, bears the burden of proving that the suspended Claimants engaged in willful misconduct. *Gillins v. Unem-*

employer deducts the equivalent of the unemployment compensation benefits from the subsequent back pay award, then it falls to the employer to repay the Unemployment Compensation Fund. [43 **P.S.** § 864.]

Summary Pa.Jur.2d, Employment and Labor Relations, § 4:106 (1994).

*ployment Compensation Board of Review*, 534 Pa. 590, 600, 633 A.2d 1150, 1155–56 (1993). Where, as here, Caterpillar claims that Claimants' willful misconduct is based upon a violation of its work rules, the Court must determine if the work rule is reasonable in light of all the circumstances and whether Claimants had good cause to violate the work rule. *Frumento v. Unemployment Compensation Board of Review*, 466 Pa. 81, 87, 351 A.2d 631, 634 (1976).

Here, Caterpillar had a work rule which prohibited both union and non-union employees from wearing T-shirts that "attack or insult individual persons, whether they are hourly employees, supervisors, managers, local Union leaders, the president of the UAW or even the chairman of Caterpillar." As the majority acknowledges, there is no dispute that Claimants were fully aware of this work rule, especially since Caterpillar reiterated the work rule and its intention to enforce the rule less than two months before the incident which resulted in Claimants being suspended. The purpose for having this work rule was to avoid in-plant confrontations between employees since both Caterpillar and union officials were concerned over violence on the shop floor. The majority also acknowledges that this constitutes a reasonable purpose for having such a work rule, a conclusion that I join.

Despite recognizing that Claimants were aware of the work rule and that there was a reasonable basis for having the work rule, the majority still finds that the work rule, as applied to the specific facts of this case, was not reasonable. In particular, the majority finds that the language of the T-shirts worn by Claimants was not offensive, that the work rule was not specific enough as to what actually constituted a violation of the work rule, and that the work rule interfered with Claimants' right to support a union position. I cannot agree.

Here, the T-shirts in question contained in bold print the slogan "PERMANENTLY REPLACE FITES," indicating the chairman and CEO of Caterpillar. Despite Claimants' attempt to disguise this message with other less noticeable language describing a National Labor Relations Board complaint filed against Caterpillar for suspending an employee

who wore this same slogan, I believe that this T-shirt could reasonably be viewed as attacking or insulting the chairman and CEO of Caterpillar. Since the plain language of the work rule prohibited the wearing of a T-shirt insulting or attacking a Caterpillar employee, the Claimants clearly violated the work rule in dispute.

Also, I cannot agree with the position that the Caterpillar work rule failed to clearly delineate that the T-shirts worn by Claimants would be considered a violation of the work rule. Here, the record reveals that Caterpillar supervisors informed Claimants that their T-shirts violated the work rule *before* any suspensions were imposed. The supervisors also warned Claimants that they would be suspended unless they removed the T-shirt, covered up the offending statement or wore the T-shirt inside out. Under these circumstances, I must conclude that Claimants were given reasonable notice that Caterpillar deemed their T-shirts to be violative of the work rule and had a reasonable opportunity to comply with the work rule before Claimants were suspended for violating the rule.

Neither can I agree that the work rule unreasonably interfered with Claimants' ability to support a union position. One of the Claimants, who was a union official, testified that he was aware that the Claimants could have complied with the options presented by Caterpillar and subsequently filed a grievance protesting Caterpillar's action. Since such recourse was available, I believe that Caterpillar's actions did not unreasonably interfere with Claimants' ability to support a union position. Moreover, an employee's conduct which violates recognized company policy, which is otherwise reasonable and lawful, fails to automatically become protected because the employee alleges it was done to further union activity. *See Flores v. Unemployment Compensation Board of Review,* 686 A.2d 66, 74 (Pa.Cmwlth.1996) (Commonwealth Court has consistently held that "willful misconduct is not excused simply because it occurred while an employee is engaging in union activities"); *Williams v. Unemployment Compensation Board of Review,* 109 Pa. Commw. 329, 531 A.2d 88 (1987) (claimant engaged in willful misconduct and was not eligible for benefits where in

the course of his representation of union meetings with management, claimant violated a work rule prohibiting the use of profane and vulgar language). Thus, since the T-shirt clearly violated Caterpillar's work rule and it did not interfere with Claimants' ability to support a union position, I believe that the work rule in question was reasonable when it was applied to the facts of this case.

Based on the above, the record clearly demonstrates that Caterpillar had a work rule which prohibited all employees from wearing a T-shirt which insulted or attacked another employee, that this work rule was reasonable, that Claimants were aware of this work rule's existence, that Claimants were made aware that their T-shirts which contained the slogan "PERMANENTLY REPLACE FITES" were considered by Caterpillar to violate the work rule and that Caterpillar offered Claimants three remedial options in order to avoid being suspended. Nevertheless, Claimants freely chose to deliberately violate the work rule without just cause by continuing to wear the T-shirts. As a matter of law, I believe this evidence established that Claimants engaged in willful misconduct by wearing the T-shirts since they knowingly violated a work rule which Caterpillar indicated it would enforce. *See County of Luzerne v. Unemployment Compensation Board of Review,* 148 Pa. Commw. 473, 478, 611 A.2d 1335, 1338 (1992) (when an employee is advised that a rule will be strictly enforced, even though it had not been previously enforced, violation of the rule constitutes willful misconduct and renders the employee ineligible for unemployment compensation benefits).[1] Therefore, since Caterpillar met its burden of proving that Claimants engaged in willful misconduct, I would reverse the order of the Commonwealth Court affirming the award of unemploy-

1. The majority attempts to distinguish *County of Luzerne* on the grounds that the employee in that case was specifically advised that her actions violated a court policy and that the policy involved an objective, nondiscretionary guideline whereas in this case, Caterpillar's work rule involved a subjective policy. I believe that the majority makes a distinction without a difference since as noted above, Claimants were informed before they were suspended that their t-shirts violated the work rule and that there were three alternatives available to Claimants in order to avoid being suspended.

ment compensation benefits to Claimants. Accordingly, I must dissent.

NIGRO, J., joins in this dissenting opinion.