**Larry D. SCOTT, Petitioner**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 26, 2011.

Decided Feb. 1, 2012.

Larry D. Scott, petitioner, pro se.

Shawn J. Jayman, Assistant Counsel, Harrisburg, for respondent.

BEFORE: PELLEGRINI, Judge,[1] and BROBSON, Judge, and McCULLOUGH, Judge.

OPINION BY Judge McCULLOUGH.

Larry D. Scott (Claimant) petitions *pro se* for review of the January 31, 2011, order of the Unemployment Compensation Board of Review (Board), affirming the decision of a referee that Claimant was ineligible for benefits under section 402(e) of the Unemployment Compensation Law (Law).[2] We affirm.

Claimant was employed as a CSR Tech II by Abington Memorial Hospital (Employer) from August 11, 1997, through September 9, 2010. Claimant's job duties included processing trays with instruments and items to be used by doctors performing surgeries. Employer has a policy which requires that all instruments and items on the trays be carefully examined before being processed to ensure that they are clean. The use of unclean instruments and items during a surgical procedure could have a negative effect on the health of a patient. (Findings of Fact Nos. 1–4.)

On several occasions during his employment, Claimant was verbally counseled that he must make sure that the instruments and items on the trays were cleaned before the trays were sterilized and sent to the operation room for use in surgical procedures. On May 20, 2010, Claimant was issued a written warning for processing trays containing "bio burden" from the surgery of a previous patient on the instruments. Claimant was warned that any further infractions of the cleanliness policy would result in further discipline, up to and including termination. Despite Claimant's ability to properly perform his job duties, on August 18, 2010, the operating room returned a tray that had been processed by Claimant on August 12, 2010, because the tray contained suture material from a previous surgical operation. As a result, on September 9, 2010, Claimant was suspended for violating Employer's cleanliness policy. On September 23, 2010, Claimant's suspension was converted to a discharge. (Findings of Fact Nos. 5–12.)

Claimant filed a claim for benefits with the Philadelphia Unemployment Compensation Service Center (Service Center), which determined that Claimant was ineligible for benefits under section 402(e) of the Law. Claimant appealed, and the case was assigned to a referee for a hearing.

Claimant testified that he had been processing trays for operations for approximately twenty years. Claimant acknowledged that he had been spoken to and/or warned about unclean trays on numerous occasions and that the presence of suture material could be a potential danger to future surgical patients. However, Claimant denied processing the August 12, 2010, tray or ever leaving suture material on any

1. This case was assigned to the opinion writer before January 7, 2012, when Judge Pellegrini became President Judge.

2. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 802(e). Section 402(e) of the Law provides that an employee shall be ineligible for compensation for any week in which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work.

of his processed trays. Rather, Claimant asserted that he capably performed his job over the years, noting that he consistently received excellent job performance evaluations. (N.T. at 15–22.)

Miriam Perera, a human resources business partner with Employer, testified that Claimant was discharged on September 9, 2010, because of continued poor work performance in the processing of surgical trays.[3] Perera indicated that Employer maintains a policy, Local Office # 15, which requires CSR Techs to inspect each surgical tray to insure that everything is clean before the tray is loaded into the sterilization machine and eventually used in the operating room. (N.T. at 6–7.)

Linda Finn, Employer's central sterile manager, explained that the CSR Tech is the last set of eyes to view a tray before it enters the sterilization machine and that inspection of the tray is vital to prevent any "bio burden" from a previous surgery from being introduced into a new patient, which could result in infection or even death. Finn testified that, on August 18, 2010, a surgical tray processed by Claimant on August 12th was opened in the operating room and a long piece of suture material from a previous surgery was discovered on the tray. Finn opined that Claimant should have seen and removed this suture material during his inspection of the tray. When questioned, Finn indicated that Claimant could not explain how he missed this material and indicated his belief that it might have come off something else in his department. However, Finn noted that there is no suture material in Claimant's department. Finn also indicated that the trays go through a wash process before they are inspected, but the suture material remained on the tray, perhaps stuck in a clamp or other instrument. (N.T. at 7–9.)

Finn testified that she had previously spoken to Claimant on many occasions about dirty trays, after materials such as bone and cement were found on sterilized trays inspected by Claimant. Finn identified pictures of a dirty tray from May 2010, which was inspected by Claimant and contained cement from a prior orthopedic procedure. Finn reiterated that dirty trays could result in the death of a patient. Upon further questioning, Finn indicated that Claimant's failed inspections have been an ongoing problem since August 2009. Specifically, Finn noted that Claimant was placed on administrative leave in August 2009 as a result of multiple dirty trays, that Claimant received a written warning for dirty trays in September 2009, and that Claimant was suspended for three days in May 2010 after the tray with cement was discovered. After this last incident, Claimant was advised that any further policy infraction would result in additional discipline, up to and including termination. Further, Finn testified that Claimant never denied inspecting the August 12, 2010, tray. (N.T. at 9–12.)

Peg Below, Employer's director of surgical services, testified that when a dirty tray is discovered in the operating room,

3. This date conflicts with the Board's finding that Claimant was terminated on September 23, 2010. Claimant likewise contends in his brief to this Court that his actual date of termination was September 9, 2010. A review of the record supports Perera's testimony and Claimant's contention. Specifically, Exhibit 9 in the record indicates that the decision to terminate Claimant was made on September 8, 2010, that Claimant's termination was effective the next day, September 9, 2010, and that Claimant requested and received a copy of his termination notice on September 23, 2010. Nevertheless, while the Board erred in finding the latter date to be Claimant's date of termination, such error was harmless and does not affect the outcome of this case.

the patient is exposed to anesthesia for a prolonged period until a new instrument tray is obtained. Below explained that when a patient is exposed to material from a previous surgery, such as "bio burden," the patient may need different courses of antibiotics to prevent an infection, additional immunizations, and/or a tetanus shot. Below described dirty trays as placing Employer at risk. (N.T. at 14.)

Ultimately, the referee affirmed the decision of the Service Center and found that Claimant was ineligible for benefits under section 402(e) of the Law. The referee concluded that the August 12, 2010, dirty tray was not a mistake but was the result of Claimant's failure to diligently perform an important aspect of his job duties. The referee noted that Claimant was very capable of properly performing his job duties and that he had no plausible explanation or justification for allowing a dirty tray to reach the operating room on August 18, 2010, especially since Claimant received a written warning for the same type of infraction in May 2010. Thus, the referee held that Employer had met its burden of proving that Claimant committed willful misconduct. Claimant appealed to the Board, which affirmed the referee's decision and adopted the referee's findings and conclusions. Claimant filed a request for reconsideration with the Board, which was denied by order dated March 7, 2011.

On appeal to this Court,[4] Claimant appears to argue that the Board's findings are not supported by substantial evidence and that the Board erred in concluding that his poor work performance constituted willful misconduct. We disagree with each of these arguments.

Although the Law does not define willful misconduct, it has been construed by our Court as: (1) the wanton or willful disregard of the employer's interests; (2) the deliberate violation of the employer's rules/directives; (3) the disregard of the standards of behavior which an employer can rightfully expect from an employee; and (4) negligence demonstrating an intentional disregard of the employer's interest or the employee's duties and obligations. *Kelly v. Unemployment Compensation Board of Review,* 747 A.2d 436 (Pa.Cmwlth.2000). The employer bears the burden to prove that a discharged employee was guilty of willful misconduct.[5] *Gillins v. Unemployment Compensation Board of Review,* 534 Pa. 590, 633 A.2d 1150 (1993).

We note that mere incompetence, inexperience, or inability to perform a job generally will not support a finding of willful misconduct. *Herndon v. Unemployment Compensation Board of Review,* 115 Pa.Cmwlth. 419, 540 A.2d 633 (1988); *Culbreath v. Unemployment Compensation Board of Review,* 57 Pa.Cmwlth. 626, 426

4. Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed or whether necessary findings of fact are supported by substantial evidence. *Shrum v. Unemployment Compensation Board of Review,* 690 A.2d 796 (Pa.Cmwlth.), *appeal denied,* 548 Pa. 663, 698 A.2d 69 (1997). Furthermore, the Board's findings of fact are conclusive on appeal so long as the record, taken as a whole, contains substantial evidence to support those findings. *Taylor v. Unemployment Compensation Board of Review,* 474 Pa. 351, 378 A.2d 829 (1977). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brown v. Unemployment Compensation Board of Review,* 854 A.2d 626 (Pa.Cmwlth.2004).

5. Whether or not an employee's actions amount to willful misconduct is a question of law subject to review by this Court. *Nolan v. Unemployment Compensation Board of Review,* 57 Pa.Cmwlth. 186, 425 A.2d 1203 (1981).

A.2d 1267 (1981). However, it is well-established that an employee's failure to work up to his or her full, proven ability, especially after multiple warnings regarding poor work performance, must be construed as willful misconduct because such conduct demonstrates an intentional disregard of the employer's interest or the employee's obligations and duties. *Sacks v. Unemployment Compensation Board of Review,* 74 Pa.Cmwlth. 31, 459 A.2d 461 (1983); *Cullison v. Unemployment Compensation Board of Review,* 66 Pa.Cmwlth. 416, 444 A.2d 1330 (1982).

In the present case, the testimony of Perera, Finn, and Below discussed above constitutes substantial evidence in support of the Board's findings. In fact, Claimant admitted before the referee that he was aware of all policies and procedures pertaining to his job duties, he was capable of performing these duties, he had been previously warned regarding dirty trays, and the dirty trays could lead to dire consequences for a new patient.[6] (N.T. at 15, 20–22.) The remaining question, then, is whether the Board's findings support the Board's conclusion of willful misconduct. We conclude that they do in this case.

Similar to the claimants in *Sacks* and *Cullison,* Claimant herein was repeatedly warned regarding his poor work performance with respect to the cleanliness of the surgical trays he inspected. The record reveals that Claimant was warned and/or disciplined for dirty trays on at least three occasions from August 2009 to May 2010.[7] Following the last incident, Claimant was specifically warned that any further infractions would result in additional discipline, up to and including termination. Despite this warning, just three months later, in August 2010, Claimant failed to properly inspect another tray, which included suture material from a previous surgical procedure.[8] At the very least, Claimant's continued poor work performance demonstrated an intentional disregard of the employer's interest or the employee's obligations and duties. Thus, the Board did not err in concluding that Claimant engaged in willful misconduct.

Accordingly, the order of the Board is affirmed.[9]

***ORDER***

AND NOW, this 1st day of February, 2012, the order of the Unemployment Compensation Board of Review, dated January 31, 2011, is hereby affirmed.

6. Claimant also admitted to the same in his brief to this Court. (Claimant's Brief at 11.)

7. In his brief to this Court, Claimant contends that his three-day suspension in May 2010 was based on "suspicious evidence." (Claimant's Brief at 13.) However, the record supports the Board's finding that Claimant was disciplined for processing at least two dirty trays containing "bio burden" from previous procedures.

8. Claimant repeatedly alleges in his brief that the last incident was simply a mistake or error on his part. However, Claimant's testimony in this regard was specifically rejected.

9. We note that Claimant raises vague allegations in his brief that the present application of the Law constitutes an ex post facto violation. However, Claimant failed to raise these allegations in his petition for review and, hence, they are waived. *Oliver v. Unemployment Compensation Board of Review,* 29 A.3d 95 (Pa.Cmwlth.2011). Moreover, we note that the prohibition against ex post facto laws only applies to statutes that involve the imposition of penal sanctions, i.e., statutes which retroactively alter the definition of criminal conduct or retroactively increase the punishment for a crime. *Frederick v. Department of Transportation, Bureau of Driver Licensing,* 802 A.2d 701 (Pa.Cmwlth.2002). The Law does not involve such sanctions.