# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gary R. Snyder,                  :
            Petitioner      :
                               :
          v.               :    No. 1788 C.D. 2013
                               :    SUBMITTED:  April 25, 2014
Unemployment Compensation    :
Board of Review,             :
            Respondent   :

BEFORE:    HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
                HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE JAMES GARDNER COLINS, Senior Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**JUDGE LEADBETTER**                                **FILED:  July 24, 2014**

Gary R. Snyder (Claimant) petitions this court for review of the order of the Unemployment Compensation Board of Review which affirmed a decision of the referee denying Claimant benefits under Section 402(e) of the Unemployment Compensation Law (Law).[1]  After review, we affirm.

The facts as found by the referee are as follows.  Claimant was employed as a field service engineer with Pittsburgh Universal LLC (Employer) from October 17, 2006 until May 3, 2013.  During his employment, Claimant

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. 2897, *as amended,* 43 P.S. § 802(e). Section 402(e) of the Law provides that a claimant is ineligible for benefits for any week "in which his unemployment is due to his willful misconduct connected to his work."

performed MRI scanner repairs and had a good performance record. While performing a repair for a customer on April 27, 2013, Claimant tried something different and deviated from Employer's approved procedures, causing the customer's MRI scanner to be inoperable for two days and resulting in a loss of $22,000. Claimant devised another procedure to fix the problem. When using the attachment he created, he failed to close the supply valve and the magnet on the MRI scanner "quenched."[2] Claimant did not take a full cylinder of gas to the worksite and if he had, the incident might not have occurred. Claimant was or should have been aware of what he was doing. The procedure Claimant devised which he thought would bypass the system made the matter worse. After Employer resolved the matter, Claimant was discharged.

Claimant's application for benefits was denied by the Allentown Unemployment Compensation Service Center, determining that his actions constituted willful misconduct. Claimant appealed, and the referee held a telephonic hearing, at which both Claimant and Employer's witness, James Balet, testified. The referee determined that "employer has shown that the claimant did not take a full cylinder of gas to do the procedure and that the method he used to fix the procedure was not the company's way of doing things." Referee's

---

[2] Claimant explained: "[T]here's a gaseous space of helium in the magnet vessel above the liquid . . . [and] [t]he space either became over pressurized or the temperature of the gas that bled back through the compressor was too warm and being that the temperatures are so strained and the magnet is so sensitive to this it immediately started the events known as a clench [sic], where the magnet starts to lose its high energy super conducting field immediately . . . ." Hearing of July 10, 2013, Notes of Testimony (N.T.) at 12; Reproduced Record (R.R.) at 16a. Claimant testified that the "liquid helium immediately boils" and "is evaporated" through a "quench vent … to the outside" until only 20% of the liquid helium remains. *Id.* at 12-13; R.R. at 16a-17a. Once the magnet is de-energized, "scanning is not possible, until the magnet is refilled with liquid helium and what we call ramping back up the field." *Id.* at 13; R.R. at 17a.

Decision/Order, July 10, 2013, at 2. The referee therefore denied benefits on the grounds of willful misconduct. Claimant appealed to the Board, which adopted and incorporated the referee's findings and conclusions and affirmed the referee's decision.[3] This appeal followed.

The term "willful misconduct," though not defined in the Law, is behavior that evidences a wanton or willful disregard of the employer's interests; a deliberate violation of the employer's work rules; a disregard of standards of behavior the employer can rightfully expect from its employee; or negligence indicating an intentional disregard of the employer's interest or an employee's duties or obligations. *Dep't of Corr. v. Unemployment Comp. Bd. of Review,* 943 A.2d 1011, 1015 (Pa. Cmwlth. 2008). Employer bears the burden of proving willful misconduct. *Scott v. Unemployment Comp. Bd. of Review,* 36 A.3d 643, 647 (Pa. Cmwlth. 2012). Where a violation of the employer's rules is alleged, the employer must show the existence of the rule and the violation of the rule by the claimant. *ATM Corp. of America v. Unemployment Comp. Bd. of Review,* 892 A.2d 859, 865 (Pa. Cmwlth. 2006). Employer must show that the claimant's violation of the rule was of an intentional and deliberate nature and not merely negligent. *Grieb v. Unemployment Comp. Bd. of Review,* 827 A.2d 422, 426 (Pa. 2003). Once the employer meets its burden of establishing a violation of a rule, the burden shifts to the claimant to prove that he had good cause for his conduct.

_____

[3] On appeal from the referee's decision, Claimant argued that the referee erred in admitting certain documents submitted by Employer. In its decision affirming the referee, the Board determined that the referee's alleged error in admitting documents over Claimant's objections was harmless error because the testimony supported the referee's findings. Claimant has not raised this issue on appeal to this court. In addition, with respect to Finding of Fact No. 6, the Board found that Claimant's actions "resulted in a loss of $22,000.00 for the customer[,]" and not [Employer], as the referee found. Board's Order at 1, R.R. at 1a.

3

*Henderson v. Unemployment Comp. Bd. of Review,* 77 A.3d 699, 719 (Pa. Cmwlth. 2013).

Claimant raises several issues on appeal, specifically: 1) whether the referee's Findings of Fact Nos. 3, 4, 5, 9, and 12, adopted by the Board, were supported by substantial evidence in the record; 2) whether the Board erred by not making certain findings of fact that he alleges would be supported by substantial evidence in the record; 3) whether the Board erred in determining that he was ineligible for unemployment compensation benefits due to willful misconduct; and 4) whether the Board erred in concluding that a single mistake lasting one second constituted willful misconduct.

In Findings of Fact Nos. 3, 4 5, 9, and 12, the referee found:

> 3.  The claimant had a good record with [MRI scanner repairs] but on April 27, 2013, the claimant tried something different with the repair he was doing.
>
> 4.  The claimant deviated from the approved procedures during the service he made on April 27, 2013.
>
> 5.  The service caused the MRI scanner to be inoperable for two days while the claimant devised another fix.
>
> . . . .
>
> 9.  The claimant devised an attachment to use but in the procedure, this made the matter worse.
>
> . . . .
>
> 12.  The claimant devised a procedure which he thought would bypass the system but that procedure made the matters worse.

Referee's Decision at 1-2.

Claimant argues that he took corrective action which he had done successfully in the past, and that this procedure was recommended by GE, the manufacturer of the MRI scanner.[4]  Claimant further avers that even if he had not tried the procedure of siphoning low pressure gas from the magnet and made a one second mistake, the MRI scanner would have been inoperable anyway due to the unavailability of high pressure helium on the weekend.  Finally, with respect to Findings of Fact Nos. 9 and 12, Claimant contends that neither his actions nor the procedure he attempted made matters worse because the fact is, despite his best efforts, a delivery of high pressure helium was necessary to complete the job and none was available on the weekend.  Claimant argues that if he "could not create it, the customer would have to wait until a delivery on Monday."  Claimant's Brief at 9.  We disagree.

Claimant testified that he knew the cylinder was not completely filled when he took it from Employer's shop to the jobsite on his service call to the customer.  N.T. at 13-14; R.R. at 17a-18a.  Claimant also admitted that when he arrived at the jobsite, he learned there was no emergency, but "since [he] was there" he would perform "routine maintenance" on the system.  *Id.* at 10; R.R. at 14a.  Claimant testified that while performing the routine maintenance, he ran out of high pressure helium gas, but determined "through past knowledge . . . and

_____

[4] Claimant argues this testimony that GE approved of this procedure was recorded as "inaudible" in the transcript from the hearing before the referee.  Claimant's Brief at 8.  We note that there are several places in the transcript where testimony was recorded as "inaudible." Claimant, however, neither specified exactly where in the transcript this testimony was allegedly offered nor raised this issue on appeal to the Board.  As such, it is waived.  *Tri-State Scientific v. Unemployment Comp. Bd. of Review,* 589 A.2d 305, 307 (Pa. Cmwlth. 1991).  In any event, the Board found that Claimant was discharged for deviating from Employer's approved procedures, not GE's, which is supported by the testimony of record.  *See* N.T. at 7 and 15; R.R. at 11a and 19a.

using another procedure, different than what [he] tried . . . [he] devised and constructed a fixture" in order to "solve that problem and that was the problem at the moment" that "[he] just didn't have enough pressure in the compressor." *Id.* at 11-12; R.R. at 15a-16a. Claimant admitted, however, that no one from Employer advised him that the procedure of sourcing low pressure helium gas from the magnet was an appropriate step to take in order to fix the problem. *Id.* at 15; R.R. at 19a. Employer's witness, James Balet, testified:

> The actions that [Claimant] took that resulted in this damage are ones that are not part of any procedure that he's followed in the past. Not part of any procedure that anyone from the company instructed him to follow. And given [Claimant's] extensive experience in the industry, we believe he knew would result in significant damage to the MRI equipment . . . I mean that contraption allowed (inaudible) pressure helium gas to blow into the MRI magnet, which is, you know, someone who's been in the industry for as long as [Claimant] knows would cause a catastrophic event, which is what happened. And as a result of him not following the procedures and intentionally putting this contraption together and then putting it into operation in (inaudible) with any procedure he had ever heard of from our company, it resulted in this damage.

*Id.* at 7-8; R.R. at 11a-12a. In addition, Claimant admitted that he attempted this different procedure once he realized he had run out of high pressure helium, because he wanted to "complete the job that [he] was sent there to do and . . . [a]lso [he] was afraid of any repercussion [he] would get for running out of high pressure helium gas." *Id.* at 13; R.R. at 17a.

Claimant's testimony and that of Employer's witness support the Board's findings that Claimant deviated from Employer's procedures and that this deviation, along with the device he created, made the situation with the customer's

6

MRI scanner worse, causing it to be inoperable for two days. It is irrelevant whether the manufacturer of the scanner recommended the procedure that Claimant tried, as he allegedly testified to, because Claimant was discharged for failing to follow Employer's procedures, not the manufacturer's procedures. Notably, the Board also found that Claimant was or should have been aware of what he was doing; that he admittedly did not bring a full cylinder of high pressure helium gas to the jobsite; and that, had he done so, this incident might not have happened. *See* Referee's Findings of Fact Nos. 8, 10 and 11. As these findings were not challenged on appeal, they are binding. *Campbell v. Unemployment Comp. Bd. of Review,* 694 A.2d 1167, 1169 (Pa. Cmwlth. 1997). Accordingly, Claimant's contentions are without merit.

Next, Claimant avers that the Board ignored material facts supported by substantial evidence in the record. Claimant refers us to specific testimony which he argues the Board should have found as fact, including his testimony that: 1) he was dispatched to the customer to handle an alleged emergency; 2) that after he arrived, he discovered there was no emergency; 3) because he had driven nine hours to service the customer, he agreed to perform maintenance on the customer's scanner; 4) the process of sourcing low pressure gas from the magnet was widely used; 5) he had successfully performed cryogenic system maintenance and repair for eleven years; 6) after several cycles of the procedure, the gauges showed it was working; 7) he was confident this procedure would work; and 8) his one second mistake occurred after he had been working six hours straight and was close to success. Claimant's Brief at 7-8.

The Board is the ultimate fact-finder and is empowered to resolve conflicts in the evidence and to determine the witnesses' credibility. *Lee v.*

7

*Unemployment Comp. Bd. of Review,* 33 A.3d 717, 721 (Pa. Cmwlth. 2011). In making these determinations, the Board may accept or reject the testimony of any witness, in whole or in part. *Korpics v. Unemployment Comp. Bd. of Review,* 833 A.2d 1217, 1219 (Pa. Cmwlth. 2003). Its findings are conclusive and binding on appeal if the record, when examined as a whole, contains substantial evidence to support those findings. *Curran v. Unemployment Comp. Bd. of Review,* 752 A.2d 938, 940 (Pa. Cmwlth. 2000). It is irrelevant whether the record contains evidence that would support contrary findings, so long as substantial evidence supports those findings actually made. *Duquesne Light Co. v. Unemployment Comp. Bd. of Review,* 648 A.2d 1318, 1320 (Pa. Cmwlth. 1994).

It is irrelevant whether Claimant had performed the improvised procedure successfully in the past or whether it was "widely used," as Claimant argued, because the Board found that this procedure was not approved by Employer. Claimant admitted that he deviated from Employer's approved procedures. In addition, the Board did not conclude that it was Claimant's "one second mistake" alone that rose to the level of willful misconduct, but that it was Claimant's overall actions in knowingly and intentionally deviating from Employer's procedures that constituted willful misconduct. *See Heitczman v. Unemployment Comp. Bd. of Review,* 638 A.2d 461, 464 (Pa. Cmwlth. 1994) (where claimant knew of the existence of the work rule and specifically failed to follow it, his conduct constituted willful misconduct). Thus, the testimony of both Employer's witness and Claimant himself supports the Board's findings.

Last, Claimant argues that the Board erred in concluding that he was ineligible for benefits due to willful misconduct and that the Board erred in concluding that a single mistake lasting one second was willful misconduct of an

8

intentional and deliberate nature. Claimant avers that his agreeing to perform routine maintenance on the customer's MRI scanner despite finding that there was no emergency and despite having driven over nine hours to get to the jobsite, proves that he did not intentionally disregard Employer's interests, but in fact, was furthering Employer's interests by accommodating the customer. Claimant contends that he "had almost succeeded in increasing the pressure to the desired level when he made a single, one second error . . . [which] resulted in the customer's being in the same position it would have been in had [he] not tried to increase the pressure: the MRI scanner would not work until high-pressure hydrogen (sic) was delivered on Monday." Claimant's Brief at 9. Finally, Claimant argues that it is "undisputed that this was a one-time event" and that at most his conduct was negligent. *Id.* We disagree.

Employer testified that Claimant had been performing MRI scanner repairs for 11 years and based on his years of experience was aware of the consequences of deviating from approved procedures. Claimant admitted that no one from Employer approved the procedure he attempted and that he had checked the gas cylinder before he left Employer to make the service call and knew that it was not full. Moreover, he admitted that he attempted the procedure with his improvised attachments in part to avoid the consequences of running out of high pressure helium gas. Thus, the record reflects that Claimant's actions were not merely negligent, and that he knowingly violated Employer's procedures. Claimant's failure to bring a full cylinder of gas with him in the first place and the subsequent actions he took, taken as a whole, caused the customer's MRI scanner to malfunction and be inoperable for two days. Because we conclude that this

9

conduct constitutes willful misconduct under the Law, we affirm the Board's decision.

_____
**BONNIE BRIGANCE LEADBETTER,**
Judge

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Gary R. Snyder,                                          :
                              Petitioner              :
                                                         :
              v.                              :  No. 1788 C.D. 2013
                                                         :
Unemployment Compensation         :
Board of Review,                              :
                              Respondent           :

# **O R D E R**

AND NOW, this 24th day of July, 2014, the order of the Unemployment Compensation Board of Review in the above-captioned matter is hereby AFFIRMED.

_____
**BONNIE BRIGANCE LEADBETTER,**
Judge