# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

The Shadowfax Corporation,      :
                    Petitioner  :
                                :  No.  2121 C.D. 2014
            v.                  :
                                :  Submitted:  May 22, 2015
Unemployment Compensation       :
Board of Review,                :
                    Respondent  :


BEFORE:    HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
           HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge


*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                          FILED:  August 4, 2015

The Shadowfax Corporation (Employer) petitions for review of the
October 27, 2014 order of the Unemployment Compensation Board of Review
(Board) affirming a referee's decision and holding that Jeanine K. Harris (Claimant)
is not ineligible for unemployment compensation benefits pursuant to section 402(e)
of the Unemployment Compensation Law (Law).[1]

Employer provides mental health and mental retardation services for
mentally and physically challenged individuals, as regulated by the Pennsylvania

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S.
§802(e).  Section 402(e) of the Law provides that an employee shall be ineligible for benefits for
any week in which her unemployment is due to her discharge from work for willful misconduct
connected with her work.

Department of Public Welfare (DPW).[2] Claimant worked as an activities coordinator for Employer until her employment was terminated on April 10, 2014. On April 4, 2014, Claimant and another staff member were taking a number of individuals under Employer's care from Employer's facility on a community outing. Claimant and the other staff member left in two vans to accommodate all of the individuals in the group. During the course of the outing, Claimant realized that one of the individuals, "Joe," was missing and she called her supervisor informing her of the issue. After a search of Employer's facility, the supervisor found Joe in the bathroom of the facility, where he had been for sixty to ninety minutes. Claimant had inadvertently left Joe behind and was aware that the incident was a violation of Employer's policy. (Findings of Fact Nos. 1-3, 7-9, 11.)

In pertinent part, Employer's rules and regulations provide that any type of abusive behavior, physical or psychological (including neglect), upon confirmation by Employer's investigation, is grounds for immediate termination. (Finding of Fact No. 4.) Employer's policy defines "neglect" as follows:

> Neglect is the failure to obtain or provide the needed services and supports for individuals under [Employer's] care, defined as necessary or otherwise required and/or a designated right by law or regulation. This includes, but is not limited to, the failure to provide needed care such as shelter, food, clothing, personal hygiene, medical care, protection from health and safety hazards, attention and supervision, including leaving individuals unattended and other basic treatment and necessities needed for development of physical, intellectual and emotional capacity and well being [sic]. This includes acts that are

---

[2] After the commencement of this action, the Department of Public Welfare changed its name to the Department of Human Services. Act of June 13, 1967, P.L. 31, *amended by* the Act of September 24, 2014, P.L. 2458, 62 P.S. §103 (effective November 24, 2014).

2

intentional and/or unintentional, regardless of the obvious occurrence of harm.

Neglect shall further include, but is not limited to, ignoring or disregarding an individual, failing to sufficiently or properly care for an individual, failing to pay attention to the needs of an individual, failing to take immediate action in regard to individual needs, and leaving an individual by themselves [sic] and/or to fend for themselves [sic] for any period of time without supervision. . . . Staff are not allowed to leave individuals unsupervised or out of their sight for any length of time in accordance to the Individualized Support Plan (ISP). This is a form of abuse. Supervision means the act of managing, directing, or overseeing individuals or projects and/or outings involving individuals. The only exception to the 24 hours of supervision is if it is decided by Management that the individual can be unsupervised and documented as such in the ISP and/or addressed on the Safety Questionnaire of the Individual's Annual Assessment.

Staff members shall not disregard an [ISP] nor take it upon themselves to expand upon or alter an individual's plan of care without approval from Management.

(Reproduced Record (R.R.) at 9a-10a.)

The incident was reported to DPW, and DPW conducted an investigation. Based on the results of DPW's investigation, Employer determined that Claimant committed an act of neglect, as defined by Employer's policy, when Claimant left Joe unsupervised. Claimant was terminated on grounds of neglect of an individual in her charge. (Findings of Fact Nos. 5, 12.)

Claimant applied for unemployment benefits. The local service center found that Claimant did not work to the best of her ability and had been warned about her work performance. The local service center further found that Claimant had not shown good cause for her work performance. Accordingly, the local service determined that Claimant's actions constituted willful misconduct, rendering her

3

ineligible for benefits under section 402(e) of the Law. Claimant appealed, and a referee held a hearing on August 14, 2014.

Anna Holland (Holland), Employer's program manager and Claimant's supervisor, testified that staff members are allowed to have no more than five individuals under their direct supervision. Holland stated that when Claimant and the other staff member took the nine individuals on an outing on April 4, 2014, the other staff member took five individuals in her van so Claimant should have taken four individuals in her van. She testified that Claimant called her forty-five to sixty minutes after they had left Employer's building to inform her that Claimant and the other staff member had forgotten Joe. Holland said that Joe was found sleeping in the bathroom and that Claimant had immediately returned to the office after the phone call. (R.R. at 41a-43a.)

Holland testified that Joe had been in the bathroom before Claimant and her group left for the outing, came out to join the group, but slipped back into the bathroom before the group left. Holland further testified that staff must always know where Joe is because he goes back and forth to the bathroom. Holland said that when Claimant returned to the office, Claimant told her that Joe was supposed to be in her van. Holland acknowledged that employees are not assigned responsibility for specific individuals; instead, all employees are responsible for all of the individuals, and Employer does not check before an outing that all individuals are with a particular supervisor. (R.R. at 43a, 47a, 50a.)

Holland said that she reported the incident to Jamie Plank (Plank), Employer's Quality Assurance Coordinator. Holland noted that Claimant had been previously written up for failure to adequately supervise individuals under her watch on October 2, 2012, October 9, 2013, and December 31, 2013, and that she personally

4

had discussed these supervision issues with Claimant on October 10, 2013, and December 31, 2013. (R.R. at 4a-5a, 43a-46a.)

Plank testified that she was involved in the investigation of the April 4, 2014 incident and that both Claimant and Holland called her that day to report it. Plank noted that DPW regulations required Employer to conduct an investigation and report the incident to the state. She stated that while Joe's ISP required that he have line-of-sight supervision every fifteen minutes, he was left alone for an hour and fifteen minutes on April 4, 2014. Plank testified that Employer's corrective action and discharge policy provides for termination of employment if neglect is found. (R.R. at 52a, 55a-56a.)

Claimant testified that she told her supervisors that she had safety concerns about Joe joining the group on the outing and had recommended that he stay on site to have easy access to the bathroom. Claimant stated that her supervisors made him join the group over her objection. Claimant testified that there are usually eight individuals that go on the outings and that she usually has three individuals in her van for each outing. (R.R. at 60a-61a, 63a.)

Claimant further testified that she and the other employee on the outing shared responsibility for Joe. She explained that the individuals were not assigned a particular van to ride in but could choose for themselves. Claimant stated that Joe was unintentionally left behind. Claimant testified that she did not know how many individuals were in the other employee's van until after the group reached its destination or that Joe was missing. (R.R. at 61a-63a.)

By decision and order dated August 19, 2014, the referee found that Employer failed to meet its burden of proving that Claimant's conduct constituted an intentional wrongdoing, a willingness to inflict harm, or a knowing indifference of

5

Employer's policy against neglect so as to establish a conscious intention to perpetrate a wrongdoing. The referee found that Claimant's conduct was unintentional and that it was not a reckless disregard of Employer's interests or her duties to the individuals. The referee specifically found Claimant's testimony credible that her action was an inadvertent oversight and that she was not the only party responsible for ensuring that all individuals were properly in the vans.

The referee also noted that Employer did not require a checklist or roster to account for all of the individuals attending an outing. The referee added that DPW's standards are not dispositive in unemployment cases and that inattention or inadvertence, even if it rises to the level of ineptness, cannot justify a denial of benefits under a willful misconduct standard absent a showing of an element of conscious wrongdoing. Accordingly, the referee reversed the local service center's determination and held that Claimant was not ineligible for benefits under section 402(e) of the Law.

Employer appealed to the Board. By decision and order dated October 27, 2014, the Board adopted the referee's findings and conclusions, and affirmed the referee's decision.

On appeal to this Court,[3] Employer argues that the Board erred in determining that Claimant's conduct did not rise to the level of willful misconduct, because Claimant's conduct deliberately violated Employer's policy regarding neglect of individuals under its care.

---

[3] Our scope of review is limited to determining whether constitutional rights have been violated, whether an error of law has been committed, and whether findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. §704.

6

Initially, we note that, although the Law does not define the term willful misconduct, our courts have defined it as including: "(1) the wanton and willful disregard of the employer's interests; (2) the deliberate violation of rules; (3) the disregard of standards of behavior which an employer can rightfully expect from its employee; or (4) negligence which manifests culpability, wrongful intent, evil design, or intentional and substantial disregard for the employer's interests or the employee's duties and obligations." *Guthrie v. Unemployment Compensation Board of Review*, 738 A.2d 518, 521 (Pa. Cmwlth. 1999) (citing *Kentucky Fried Chicken of Altoona, Inc. v. Unemployment Compensation Board of Review*, 309 A.2d 165, 168-69 (Pa. Cmwlth. 1973)).

The burden of proving willful misconduct rests with the employer. *Guthrie*, 738 A.2d at 521. An employer seeking to prove willful misconduct based on a violation of a work policy must establish the existence of a reasonable work policy and its violation by the employee. *Id.* at 522. The employer must also establish that the claimant's actions were intentional or deliberate. *Philadelphia Parking Authority v. Unemployment Compensation Board of Review*, 1 A.3d 965, 968 (Pa. Cmwlth. 2010). Whether an employee's conduct constitutes willful misconduct is a question of law subject to this Court's review. *Id.*

Mere negligence or inadvertence on its own does not rise to the level of willful misconduct. *Scott v. Unemployment Compensation Board of Review*, 36 A.3d 643, 648 (Pa. Cmwlth. 2012). Rather, willful misconduct requires "the additional element of an intentional disregard of the employer's interests." *Myers v. Unemployment Compensation Board of Review*, 625 A.2d 622, 626 n.3 (Pa. 1993). However, repeated conduct of an employee in the face of multiple warnings will support a finding of willful misconduct. *Scott*, 36 A.3d at 648.

Employer argues that the Board erred in capriciously disregarding evidence that Claimant had been previously warned concerning issues with her supervision of individuals under Employer's care. The Board capriciously disregards evidence when it "willfully or deliberately ignore[s] evidence that any reasonable person would have considered to be important." *Henderson v. Unemployment Compensation Board of Review*, 77 A.3d 699, 710 n.5 (Pa. Cmwlth. 2013). Although the Board is the ultimate fact-finder when it comes to resolving evidentiary conflicts and making credibility determinations, the Board may not willfully ignore evidence when making credibility determinations. *Id.* Here, the referee's findings of fact, which the Board adopted and incorporated, make no mention of the repeated warnings. Although the referee found Claimant's testimony credible that she inadvertently left Joe at Employer's facility, neither the Board nor the referee expressly considered Claimant's previous warnings regarding supervisory concerns in analyzing whether her actions constituted willful misconduct.

Employer asserts that, pursuant to *Scott*, Claimant's repeated violations of Employer's policy against neglecting individuals under Employer's care, despite being previously warned on multiple occasions, constitutes willful misconduct. In *Scott*, the employer discharged the claimant for failing to properly inspect a medical tray with surgical instruments in accordance with his job duties. The employer had a policy that all medical trays must be carefully examined to ensure cleanliness. Prior to the claimant's discharge, the employer had made the claimant aware of the work policy and had repeatedly warned the claimant regarding his unsuccessful inspections of the medical trays. Months before his termination, the claimant received a written warning for processing a dirty tray and was informed that his next infraction could

8

result in termination. The claimant was suspended for three days at the time of his final warning, and discharged for the subsequent infraction.

The local service center determined that the claimant was ineligible for benefits under section 402(e) of the Law. Claimant appealed, and the case was assigned to a referee.

After a hearing, the referee concluded that the claimant's failure to successfully process the medical tray was not the result of a mistake but of the claimant's lack of diligence in performing his job duties. The referee noted that the claimant was capable of performing his job duties, did not have a plausible reason for violating the employer's policy, and had previously received a written warning for a similar violation. Thus, the referee held that the employer met its burden of proving that the claimant's actions constituted willful misconduct and that the claimant was ineligible for benefits under section 402(e) of the Law. The claimant appealed to the Board, which adopted the referee's findings and conclusions and affirmed the referee's order.

On further appeal in *Scott*, we noted that the claimant was warned or disciplined at least three times prior to his termination and that the employer specifically informed the claimant that another violation could result in his discharge after his last warning. We stated that "[a]t the very least, [the claimant's] continued poor work performance demonstrated an intentional disregard of the employer's interest or the employee's obligations and duties. Thus, the Board did not err in concluding that [the claimant] engaged in willful misconduct." 36 A.3d at 648.

In unemployment cases, the Board is the ultimate fact-finder empowered to make all determinations as to witness credibility and evidentiary weight. *Peak v. Unemployment Compensation Board of Review*, 501 A.2d 1382, 1385 (Pa. 1985).

However, the Board in this case did not make any findings or determinations based on Claimant's prior received warnings and did not make any credibility determinations concerning Employer's witnesses. As reflected in *Scott*, these findings are necessary to a determination of whether Claimant's actions on April 4, 2014, rise to the level of willful misconduct. We reiterate that it is the Board's duty and functional purpose to assign credibility and weight determinations to the evidence presented. *See Wardlow v. Unemployment Compensation Board of Review*, 387 A.2d 1356, 1357 (Pa. Cmwlth. 1978). The Board's failure to do so impedes our ability to conduct meaningful appellate review. As this Court has stated:

> When . . . the burdened party did present *sufficient* evidence as a matter of law and yet failed to prevail below, we then must determine whether the reason for the adverse determination stems from the factfinder's opinion that the evidence presented was not credible, or, whether instead the factfinder committed an error of law in applying the proper principle of law to the facts presented. If the latter, we can reverse the agency, even if the factfinder has found the testimony of the burdened party credible, because in such instance the issue is a matter of law for this Court to determine. In the former instance, however, the approach is different because our scope of review precludes us from making factual findings or credibility determinations. Moreover, we decline to infer credibility. Thus, we must scrutinize the adjudication. If specific credibility determinations appear that support the result of the adjudication, then we may affirm the decision below on the basis that the burdened party failed in his burden to *persuade* the factfinder. If, however, *specific* credibility determinations do not appear in the factual findings, in the discussion or conclusions, and no other *specific* explanation for the adverse determination appears in the adjudication, then we have no other alternative but to vacate the order below and remand for specific credibility findings and for an explanation of the agency's decision; otherwise we could not perform our appellate review function.

*Kirkwood v. Unemployment Compensation Board of Review*, 525 A.2d 841, 844 (Pa. Cmwlth. 1987) (alteration in original).

Accordingly, we vacate the Board's order and remand to the Board for a new decision that addresses all relevant evidence of record and to issue findings concerning the previous warnings given to Claimant and the credibility of Employer's witnesses.

_____
PATRICIA A. McCULLOUGH, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

The Shadowfax Corporation,        :
         Petitioner      :
                              :  No. 2121 C.D. 2014
         v.                :
                              :
Unemployment Compensation   :
Board of Review,             :
         Respondent    :

## *ORDER*

AND NOW, this 4th day of August, 2015, the October 27, 2014 order of the Unemployment Compensation Board of Review (Board) is vacated. The case is remanded to the Board for further proceedings consistent with this opinion.

Jurisdiction relinquished.

_____
PATRICIA A. McCULLOUGH, Judge