# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Angela J. DiBella,     :
    :
    Petitioner     :
    :
    v.     : No. 1069 C.D. 2016
    : Submitted: December 23, 2016
Unemployment Compensation     :
Board of Review,     :
    :
    Respondent     :


BEFORE:     HONORABLE RENÉE COHN JUBELIRER, Judge
    HONORABLE PATRICIA A. McCULLOUGH, Judge
    HONORABLE JAMES GARDNER COLINS, Senior Judge


OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE COLINS**     **FILED: March 24, 2017**


Angela J. DiBella (Claimant) petitions for review of an order of the Unemployment Compensation Board of Review (Board) affirming the determination by a Referee that Claimant was ineligible for unemployment compensation benefits under Section 402(e) of the Unemployment Compensation Law[1] (Law) because she was discharged from her employment with Aramark

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e). Section 402(e) of the Law provides that an employee shall be ineligible for compensation for any week in which his or her unemployment is due to willful misconduct connected to his or her work. *Id.*

Sports, LLC (Employer) for willful misconduct. For the reasons that follow, we affirm.

Claimant began working at Employer in February 1994 as a part-time cashier and concession stand manager at the Wells Fargo Center during professional basketball and hockey games; her last day of work was March 11, 2016 pending. (Record (R.) Item 16, Board's Decision and Order, Finding of Fact (F.F.) ¶1.) Following a suspension on March 11, 2016 pending investigation, on March 15, 2016, Employer notified Claimant by letter that her employment had been terminated based upon her violation of Employee Handbook rules regarding theft and cash handling. (R. Item 6, Employer Separation Information at 35.) The Unemployment Compensation Service Center issued a determination on April 1, 2016, finding that Claimant was discharged for alleged dishonesty and that her actions constituted willful misconduct, therefore she was ineligible for benefits under Section 402(e) of the Law. (R. Item 7, Notice of Determination.) Claimant appealed and a hearing was held before a Referee on April 26, 2016. Claimant, who was represented by counsel, testified at the hearing, as did Employer's Human Resources Manager. On April 28, 2016, the Referee issued a decision and order concluding that Claimant's violations of Employer's cash handling policies, absent any credible justification for the violations, constituted willful misconduct, and she was therefore ineligible for benefits under Section 402(e) of the Law. (R. Item 12, Referee's Decision and Order.) Claimant appealed the Referee's decision to the Board.

On July 7, 2016, the Board issued an opinion and order affirming the Referee's decision and order. (R. Item 16, Board Opinion and Order.) In its opinion, the Board made the following findings of fact:

2

1. The claimant was last employed as a cashier/stand manager by Aramark Sports, LLC, from February 1994, with a last day worked of March 11, 2016. The claimant's final rate of pay was $17.44 per hour.

2. The claimant worked on a part-time basis, an average of 25 hours per week and had average weekly earnings in the amount of $436.

3. The employer has cash handling policies. Those policies provide for discharge for failing to ring in a sale. Mixing one's own funds with the employer's funds is also prohibited as well as under ringing a sale to make up for a previous over ring.

4. The claimant was employed since 1994 and was aware of the employer's policies.

5. On November 27, 2015, the claimant was issued a written warning for violating the employer's cash handling policies by having an 8.7% discrepancy in the amount of cash that she turned over to the employer at the end of her shift.

6. On December 18, 2015, the claimant was issued a written warning and suspension for violating the employer's cash handling policies by failing to properly account for her pretzel sales.

7. On March 9, 2016, the employer set up video cameras at Stand #207, where the claimant and other coworkers worked.

8. The video camera revealed that on March 9, 2016, the claimant violated the cash handling policies by making up voids instead of reporting the voids to the supervisor to handle.

9. The video camera also revealed that the claimant violated the employer's cash handling policies by accepting cash from customers without putting the cash in the register and by taking cash from her pocket and putting the cash in the cash register.

3

10. The video camera also revealed that the claimant violated the employer's cash handling policies by making sales to customers without registering the sales in the cash register.

11. As a result, on March 15, 2016, the claimant was discharged for theft and violation of the employer's cash handling policies.

(*Id.*, F.F. ¶¶1-11.) In denying her benefits, the Board reasoned that Claimant had received discipline on prior occasions for violating Employer's cash handling policy, and that she admitted to failing to ring items into her cash register in order to "make up" for previous register voids on the date Employer had installed a video camera at her work station. (*Id.*, Discussion.) The Board further concluded that Claimant's stated reason for violating Employer's policy (that there was a long line of customers waiting and it was easier to correct a mistake herself than to follow the policy of calling for a supervisor to correct said error) did not constitute good cause for multiple violations, after multiple warnings. (*Id.*) Claimant petitioned this Court for review of the Board's opinion and order.[2]

On appeal, Claimant admits it is undisputed that she violated Employer's existing rules or policies, of which she was aware. However, she contends that the Board's findings are unsupported by substantial evidence and that she was, in fact, following the accepted standard practices of Employer. Claimant asserts that the Board "should have inferred an adverse inference against [Employer] for failing to have a supervisor testify that [her] alleged actions were

---

[2] Our scope of review of the Board's decision is limited to determining whether errors of law were committed, constitutional rights or agency procedures were violated, and necessary findings of fact are supported by substantial evidence. 2 Pa. C.S. § 704; *Henderson v. Unemployment Compensation Board of Review*, 77 A.3d 699, 710 n.4 (Pa. Cmwlth. 2013).

not the standard practice for handling voids at cash registers." (Claimant's Brief at 18.) We do not agree.

Willful misconduct is defined by the courts as (i) an act of wanton or willful disregard of the employer's interest; (ii) a deliberate violation of the employer's rules; (iii) a disregard of standards of behavior which the employer has a right to expect of an employee; or (iv) negligence indicating an intentional disregard of the employer's interest or of the employee's duties and obligations to the employer. *Caterpillar, Inc. v. Unemployment Compensation Board of Review*, 703 A.2d 452, 456 (Pa. 1997); *Scott v. Unemployment Compensation Board of Review*, 36 A.3d 643, 647 (Pa. Cmwlth. 2012). The employer bears the burden of proving that the claimant engaged in willful misconduct leading to the discharge. *Caterpillar, Inc.*, 703 A.2d at 456; *Scott*, 36 A.3d at 647. If the employer makes that showing, the burden shifts to the claimant to show good cause for her conduct. *Henderson v. Unemployment Compensation Board of Review*, 77 A.3d 699, 719 (Pa. Cmwlth. 2013); *ATM Corporation of America v. Unemployment Compensation Board of Review*, 892 A.2d 859, 865 (Pa. Cmwlth. 2006).

Here, Employer's Human Resource Manager testified that Claimant was discharged from her employment for violation of Employer's progressive discipline policy including cash mishandling, and that on different occasions, Claimant had violated Employer policy by having cash shortages or excesses, failing to ring in items, and mixing Employer money with her personal belongings. (R. Item 11, Referee's Hearing: Transcript of Testimony (H.T.) at 6.) The Human Resource Manager testified that Claimant had been written up on November 23, 2015 for a cash overage, and again on December 17, 2015, for cash mishandling and failure to count her merchandise properly, at which time she received a

5

suspension; an Employee Action/Disciplinary Notice Form documenting Claimant's December 2015 suspension indicates that Claimant had received prior counseling regarding Employer rules, regulations and policy on five previous occasions. (*Id*., H.T. at 11-13; Exhibit 4.) The Human Resource Manager testified that she had reviewed a video recording from March 9, 2016 taken from a surveillance camera installed in Claimant's concessions stand, and stated that Claimant could be seen taking money from customers but not ringing in products and taking money out of her pocket and placing it into a cash register; she stated that the third step of progressive discipline for cash mishandling is termination. (*Id*., H.T. at 7-10, 13.)

The record contains Employer's termination letter to Claimant, which indicates that "[y]ou were observed via non audio video recording, taking cash from your assigned register and from customers and placing it with your personal belongings. You were also observed not ringing in food for which you collected payment. These instances are being considered theft and/or cash mishandling, which are terminable offenses listed in the [Collective Bargaining Agreement] and Employee Handbook."[3] (R. Item 11, Employer Exhibit 5.)

---

[3] Employer's Wells Fargo Center Employee Handbook includes a section entitled "Cash Handling Policies and Procedures" and directs, *inter alia*, that:

- Under no circumstances may a cashier/server under ring to correct a previous error. An over ring slip must be prepared immediately if an over ring occurs, and must be signed by a supervisor.
- Each cashier/server is responsible for his/her own drawer. Sharing a drawer between cashiers/servers is not permitted.
- Any exchange of money between cashiers/servers is not permitted without a Supervisor's permission.
- Mixing or exchanging your personal money with company funds is not permitted.
- At the end of the cashiers/servers shift, the total cash returned is compared to the total accumulated by the cash register. A shortage or overage indicates inefficiency on the

**(Footnote continued on next page…)**

We find no merit in Claimant's assertion that she was merely following accepted standard cash handling practices, and therefore had good cause for her actions. Claimant produced no evidence, other than her own testimony, in support of her argument that all of Employer's supervisors accepted, and indeed encouraged the cash handling practices of taking cash without ringing up an item to correct a register over-ring, instead of calling the supervisor to void the transaction. Claimant refused to explain why the video showed her taking money out of her pocket and putting it in a cash register, asserting that she was not paying that much attention to the video when she watched it. (H.T. at 39.) Regardless, our case law holds that supervisory acquiescence does not excuse disqualifying willful misconduct; the Pennsylvania Supreme Court held, in *Temple University v. Unemployment Compensation Board of Review*, 772 A.2d 416, 419 (Pa. 2001), that a mistaken belief that a claimant's supervisor could authorize extra pay for hours not worked did not constitute a valid justification for receipt of inflated paychecks. Further, no case holds that an immediate supervisor is required to testify for an employer in order to support a finding of willful misconduct that disqualifies a claimant from the receipt of unemployment compensation benefits. The testimony of Employer's Human Resources Director regarding her personal knowledge of Claimant's history of warnings and suspensions, her review of the

---

**(continued…)**

> cashiers/servers part that may necessitate the cashiers/servers be charged with a cash handling violation. **Cash overages or shortages, no matter what the amount, are unacceptable**. Three (3) violations within a one-year period may result in disciplinary action, up to and including termination.
>
> - You will be reprimanded for violations of the above rules. Copies of violation warnings will be recorded in your personnel file. Excessive violations may result in termination.

(R. Item 11, Employer Exhibit 7.)

7

surveillance video during which Claimant was observed violating said cash handling procedures, and the documentation of cash handling policies and procedures of which Claimant acknowledged she was well aware, are clearly sufficient to support the Board's finding of willful misconduct.

Accordingly, the order of the Board is affirmed.

_____
**JAMES GARDNER COLINS, Senior Judge**

8

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Angela J. DiBella,                          :
                                            :
              Petitioner               :
                                            :
       v.                          :  No. 1069 C.D. 2016
                                            :
Unemployment Compensation                   :
Board of Review,                            :
                                            :
              Respondent               :

## ORDER

AND NOW, this 24th day of March, 2017, the Order of the Unemployment Compensation Board of Review in the above-captioned matter is hereby AFFIRMED.

 

_____

**JAMES GARDNER COLINS, Senior Judge**