# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Leslie V. Mallory,              :
                                      :
                  Petitioner           :
                                        :
                   v.                 : No. 2465 C.D. 2015
                                        : Submitted: September 16, 2016
Unemployment Compensation     :
Board of Review,                    :
                                        :
                   Respondent      :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                 HONORABLE MICHAEL H. WOJCIK, Judge
                 HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE COLINS**               **FILED: February 10, 2017**

Leslie V. Mallory (Claimant) petitions, *pro se*, for review of an order of the Unemployment Compensation Board of Review (Board) affirming the determination by a Referee that Claimant was ineligible for unemployment compensation benefits under Section 402(e) of the Unemployment Compensation Law[1] (Law) because she was discharged from her employment with Path Inc. (Employer) for willful misconduct. For the reasons that follow, we affirm.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e). Section 402(e) of the Law provides that an employee shall be ineligible for compensation for any week in which his or her unemployment is due to willful misconduct connected to his or her work. *Id.*

Claimant began working at Employer on October 29, 2001 and her last day of work with Employer was on May 29, 2015 in the position of Full-Time Program Supervisor II. (Record (R.) Item 11, Board Opinion and Order, Finding of Fact (F.F.) ¶1.) Claimant worked in Employer's Community Living Arrangements (CLA) program, which provides housing for approximately 90 people with intellectual disabilities. (R. Item 8, Referee's Hearing Transcript (H.T.) at 24.) On June 12, 2015, Claimant filed an initial claim with the Department of Labor and Industry, in which she asserted that she was discharged for unsatisfactory work performance. (R. Item 2, Internet Initial Claim.) The Unemployment Compensation Service Center issued a determination on June 29, 2015 finding that Claimant did not work to the best of her ability despite warnings about her unsatisfactory work performance and therefore she was ineligible for benefits under Section 402(e) of the Law. (R. Item 4, Notice of Determination.) Claimant appealed and a hearing was held before a Referee on July 31, 2015. Claimant, who was represented by counsel, testified at the hearing along with two employees of Employer: the Human Resources Director and the Director of the CLA program. On August 6, 2015, the Referee issued a decision and order affirming the determination of the Service Center that Claimant committed willful misconduct leading to her termination and she was ineligible for benefits under Section 402(e) of the Law. (R. Item 9, Referee's Decision and Order.) Claimant appealed the Referee's decision to the Board.

On October 23, 2015, the Board issued an opinion and order affirming the Referee's decision and order. (R. Item 11, Board Opinion and Order.) In its opinion, the Board made the following findings of fact:

2. The employer maintains a policy that prohibits

2

supervisors from scheduling employees to work more than 16 consecutive awake hours.

3. The claimant was aware of the employer's policy.

4. The claimant was responsible for scheduling employees at four of the employer's worksites and received prior warnings and a suspension for overscheduling and/or double scheduling employees and for failing to communicate with the employer regarding scheduling difficulties.

5. On April 20, 2015, the employer met with the claimant and discussed with her the expectation that she would communicate with her staff and supervisor to ensure proper coverage for the work sites.

6. Although the employer could have discharged the claimant, it chose to issue a warning because the claimant was dealing with the death of her grandmother and had taken a leave of absence to handle her own medical issues.

7. The claimant refused to sign the warning.

8. On May 23, 2015, the claimant was out of town for the Memorial Day holiday and admits that she made a scheduling error; the claimant further admits that she was distracted and did not immediately notify her supervisor of the scheduling error.

9. The claimant admits not returning her supervisor's telephone call over the weekend.

10. On May 29, 2015, the employer suspended the claimant while it investigated the scheduling error and lack of communication that occurred over the Memorial Day holiday.

11. The employer determined that the claimant would be discharged as a result of the most recent scheduling and communication errors and offered the claimant the opportunity to resign in lieu of discharge.

12. The claimant was not working to the best of her ability.

13. On June 12, 2015, the employer accepted the claimant's resignation.

(*Id.*, F.F. ¶¶2-13.) The Board concluded that the testimony and evidence showed that Claimant had allowed her work product to deteriorate through carelessness and that her work demonstrated a disregard for her duties and Employer's interests. (*Id.*, Discussion at 3.) Concluding that Claimant had not demonstrated good cause for her inability to work to her proven performance, the Board held that Claimant engaged in willful misconduct and she was ineligible under Section 402(e) of the Law. (*Id.*) Claimant petitioned this Court for review of the Board's opinion and order.[2]

On appeal, Claimant argues that there was insufficient evidence to demonstrate that Claimant's work performance had deteriorated through carelessness, such that she should be found to have engaged in willful misconduct that supports the denial of unemployment compensation benefits. We disagree. Willful misconduct is defined by the courts as (i) an act of wanton or willful disregard of the employer's interest; (ii) a deliberate violation of the employer's rules; (iii) a disregard of standards of behavior which the employer has a right to expect of an employee; or (iv) negligence indicating an intentional disregard of the employer's interest or of the employee's duties and obligations to the employer. *Caterpillar, Inc. v. Unemployment Compensation Board of Review*, 703 A.2d 452,

---

[2] Our scope of review of the Board's decision is limited to determining whether errors of law were committed, constitutional rights or agency procedures were violated, and necessary findings of fact are supported by substantial evidence. 2 Pa. C.S. § 704; *Henderson v. Unemployment Compensation Board of Review*, 77 A.3d 699, 710 n.4 (Pa. Cmwlth. 2013).

456 (Pa. 1997); *Scott v. Unemployment Compensation Board of Review*, 36 A.3d 643, 647 (Pa. Cmwlth. 2012). The employer bears the burden of proving that the claimant engaged in willful misconduct leading to the discharge. *Caterpillar, Inc.*, 703 A.2d at 456; *Scott*, 36 A.3d at 647. If the employer makes that showing, the burden shifts to the claimant to show good cause for her conduct. *Henderson v. Unemployment Compensation Board of Review*, 77 A.3d 699, 719 (Pa. Cmwlth. 2013); *ATM Corporation of America v. Unemployment Compensation Board of Review*, 892 A.2d 859, 865 (Pa. Cmwlth. 2006).

Mere incompetence, inexperience or inability to perform a job generally will not support a finding of willful misconduct. *Scott*, 36 A.3d at 647; *Cullison v. Unemployment Compensation Board of Review*, 444 A.2d 1330, 1332 (Pa. Cmwlth. 1982). However, this Court has long held that an employee's failure to work up to her full, proven ability, especially after multiple warnings regarding poor work performance, must be construed as willful misconduct because it demonstrates an intentional disregard of the employer's interests or the employee's obligations and duties to the employer. *Scott*, 36 A.3d at 648; *Cullison*, 444 A.2d at 1332.

In the present case, Employer's Human Resources Director testified that Claimant's job performance was generally satisfactory over the 13 years that she worked for Employer, but during the last several years of Claimant's term of employment she received several warnings regarding poor work performance, including a November 2012 warning related to inadequate communication with her supervisor and a September 2014 warning related to her failure to ensure coverage of the sites she supervised. (R. Item 8, H.T. at 9-11, 18; R. Item 3, Employer Separation Information, Exhibits SC 13, 16.) The Human Resources Director

5

testified that on April 15, 2015, he, the Director of the CLA program and Claimant's immediate supervisor met with Claimant to discuss three lapses in Claimant's handling of her supervisory responsibilities that occurred in the prior two months; at the meeting, Claimant was informed that these incidents would not count on her disciplinary record because she had suffered a death in her family in February 2015, was under great stress and had been on Family Medical Leave Act (FMLA)[3] leave. (R. Item 8, H.T. at 11, 21-23.) The Director of the CLA Program testified that he thought the meeting was effective in informing Claimant of the expectations for her work performance going forward but that Claimant displayed a "cavalier indifference" towards the comments of her co-workers, abruptly ended the meeting and later refused to sign an April 20, 2015 memorandum from her supervisor explaining the reasons for the earlier meeting and the expectations for her going forward. (*Id*. at 25-26; R. Item 3, Employer Separation Information, Exhibit SC 12.)

The Human Resources Director testified that the incident leading to Claimant's termination occurred on May 20, 2015 when Claimant's supervisor noticed that Claimant had accidentally scheduled one employee for the same overnight shift on May 23, 2015 at two different facilities and Claimant's supervisor asked Claimant to find someone else to cover one of the double-booked shifts. (R. Item 8, H.T. at 7, 11-12.) The Human Resources Director explained that Claimant found someone from a different team to cover the shift, but did not inform her supervisor which employee would take over the shift and did not check with the covering employee as to her schedule, when in fact that employee was already scheduled to work 16 hours that day and would end up working 24 hours

---

[3] 29 U.S.C. §§ 2601–2654.

straight. (*Id*. at 7, 12-14.) The Human Resources Director testified that Claimant's actions contravened the policy of Employer set forth in a 2000 memorandum included in a policy manual provided to all supervisors that supervisory staff had the affirmative responsibility to ensure that staff would not be scheduled to work more than 16 consecutive hours. (*Id*. at 7, 13-14; R. Item 8, Exhibit E1.) The Director of the CLA program stated in his testimony that Claimant's actions were contrary to Employer policy and also violated state policy that prohibited any employee from working 24 hours continuously. (R. Item 8, H.T. at 25.) Furthermore, the Human Resources Director testified that Claimant's failure to communicate with her supervisor regarding who she had found to cover the shift was contrary to earlier disciplinary warnings to Claimant that she must improve her communication with her supervisors. (*Id*. at 7, 12-13.) In her testimony, Claimant admitted that she did not confirm that the covering staff member would not be scheduled for more than 16 straight hours and did not inform her supervisor that she had found coverage for the shift. (*Id*. at 29.) We conclude that this testimony and evidence was substantial evidence to support the Board's findings that Claimant failed to work up to her proven ability despite several warnings regarding poor work performance.

Claimant further argues that the Board's decision should be reversed because her immediate supervisor, who had the most direct knowledge of the events and who resigned prior to the hearing, did not testify in the Referee's hearing. This argument is without merit. Claimant cites no law, and we are aware of no case that would hold that an immediate supervisor is required to testify for an employer in order to support a finding of willful misconduct that disqualifies a claimant from the receipt of unemployment compensation benefits. Moreover, the

testimony of both of the Employer's witnesses, the Human Resources Director and Director of the CLA program, demonstrates that they had direct knowledge of the reports of Claimant's poor work performance, attended the April 15, 2015 meeting with Claimant to advise her that improvement was required, suspended Claimant after the May 23, 2015 scheduling incident and participated in the decision to recommend Claimant's dismissal to Employer. (R. Item 8, H.T. at 11, 13-14, 22, 24-26.) Such personal knowledge by Employer's witnesses of the events surrounding Claimant's discharge is clearly sufficient to support the Board's finding of willful misconduct.

Claimant also appears to assert that she had good cause for her actions, arguing that following her return from FMLA leave she was given an increased caseload and no additional support. There was no evidence presented at the hearing, however, that Claimant had an increased caseload or a lack of support, and therefore we may not consider these unsupported arguments on appeal. *See Grever v. Unemployment Compensation Board of Review*, 989 A.2d 400, 402 (Pa. Cmwlth. 2010) ("[T]his court, when reviewing matters in its appellate capacity, is bound by the facts certified in the record on appeal."). The Board concluded that Claimant did not have good cause, finding that Claimant's testimony that she was distracted while putting together the staffing schedule for May 23, 2015 was not a justification for failing to heed Employer's prior warnings regarding proper scheduling and communication with coworkers. (R. Item 11, Board Opinion and Order, Discussion at 3.) Our review of the record uncovers no reason for disturbing this finding.

Finally, Claimant contends that her employment should not have been terminated based on 1 bad year out of the 13 years she worked for Employer and

8

that Employer instead could have provided her with a plan of support, mandated training or demoted her to another position instead of discharging her. This argument misunderstands the Board's role in this matter. Regardless of whether it would have been feasible for Employer to demote Claimant or provide her with more support rather than firing her, the only issue before the Board was whether Claimant's discharge was the result of willful misconduct. Having found that Claimant allowed her work performance to deteriorate to a degree that demonstrated an intentional disregard of Employer's interests and that she deliberately disregarded her duties and obligations to Employer, the Board affirmed the denial of Claimant's application for unemployment compensation benefits pursuant to Section 402(e) of the Law and was therefore not required to consider alternate possible disciplinary actions that could have been taken against Claimant.

Accordingly, the order of the Board is affirmed.

_____
**JAMES GARDNER COLINS, Senior Judge**

9

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

| | |
|---|---|
| Leslie V. Mallory, | : |
| | : |
| Petitioner | : |
| | : |
| v. | : No. 2465 C.D. 2015 |
| | : |
| Unemployment Compensation | : |
| Board of Review, | : |
| | : |
| Respondent | : |

## ORDER

AND NOW, this 10th day of February, 2017, the Order of the Unemployment Compensation Board of Review in the above-captioned matter is hereby AFFIRMED.

_____
**JAMES GARDNER COLINS, Senior Judge**