# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tami Davies-Coleman, : 
           : 
           Petitioner : 
           : 
           v. : No. 1233 C.D. 2016
           : Submitted: February 17, 2017
Unemployment Compensation : 
Board of Review, : 
           : 
           Respondent : 

BEFORE:     HONORABLE MARY HANNAH LEAVITT, President Judge
                   HONORABLE PATRICIA A. McCULLOUGH, Judge
                   HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE COLINS**                            **FILED: April 4, 2017**

Tami Davies-Coleman (Claimant) petitions for review of an order of the Unemployment Compensation Board of Review (Board) reversing the determination of a Referee and concluding that Claimant was ineligible for unemployment compensation benefits under Section 402(e) of the Unemployment Compensation Law[1] (Law) because she was discharged from her employment with

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e). Section 402(e) of the Law provides that an employee shall be ineligible for compensation for any week in which his or her unemployment is due to willful misconduct connected to his or her work. *Id*.

McCool Properties (Employer) for willful misconduct. For the reasons that follow, we affirm.

Claimant served as onsite property manager, with responsibility to lease apartments and manage tenants, at Employer's property at 124 E. Market Street, West Chester, Pennsylvania. (Record Item (R. Item) 11, Referee's Hearing: Transcript of Testimony (H.T.) at 6.) Claimant filed a claim for unemployment compensation benefits after she was discharged from her employment for "failure to adhere to company policies and procedures[,] in a dishonest manner, unsatisfactory job performance, failure to achieve sales quota in a timely manner, [and] uncooperative attitude and behavior with owners and tenants from time to time." (R. Item 3, Employer Separation Information, Employer Questionnaire.) The Unemployment Compensation Service Center issued a determination on April 21, 2016 finding Claimant ineligible for benefits under Section 402(e) of the Law. (R. Item 6, Notice of Determination.) Claimant appealed and a hearing was held before a Referee on May 11, 2016, where Claimant appeared, with her spouse as observer, and Employer, represented by counsel, offered the testimony of owners Chris McCool and Andrew McCool. On May 13, 2016, the Referee issued a decision and order reversing the determination of the Service Center. (R. Item 12, Referee's Decision/Order.) The Referee determined that Employer had discharged Claimant due to performance concerns, and had testified to some alleged dishonesty on the part of Claimant, but the competent evidence of record was insufficient to support its allegations. (*Id.*, Reasoning.) Employer appealed the Referee's decision to the Board.

On June 23, 2016, the Board issued an opinion and order reversing the Referee's decision, and made the following findings of fact:

2

1. The claimant worked full-time as a property manager beginning on March 25, 2015, until her last day worked on or about February 26, 2016, at a final salary of approximately $53,000 per year.

2. Tenants signed a lease with an expiration date of May 31, 2016.

3. The claimant was aware of the lease expiration date.

4. The claimant spoke to the owners at a meeting about allowing the tenants to terminate their lease early.

5. Prior to the meeting, the claimant would email the owners on whether they can help the tenants out by letting them move out early.

6. The claimant would meet with the tenants regularly.

7. The owners did not agree to let the tenants out of their lease early, but did agree that they can go month-to-month after the lease expired on May 31, 2016.

8. After the meeting, the claimant changed the lease expiration date to April 30, 2016.

9. The owners did not authorize the change.

10. When confronted about the change, the claimant alleged that she was not clear from the meeting on whether she could change the lease end date.

11. The claimant was discharged for changing the lease end date for the tenants.

- -

(R. Item 16, Board's Decision and Order, Findings of Fact (F.F.) ¶¶1-11.) The Board determined that although the owners testified to multiple reasons for Claimant's discharge from employment, the owners testified that the final "straw that broke [Employer's] back" was Claimant's intentional manipulation of a lease

end date, and therefore the Board would analyze whether that particular incident constituted willful misconduct sufficient to result in the denial of benefits.[2] (R. Item 16, Discussion.) The Board concluded that Claimant's conduct in doing so, on a legal document without Employer approval and in direct contravention of Employer's instructions, exhibited a disregard of its interests and a disregard of the standards of behavior that Employer had a right to expect. (*Id*.) Claimant petitioned this Court for review of the Board's opinion and order.[3]

On appeal, Claimant challenges the Board's findings with regard to the meeting Claimant had with Employer several days before Claimant changed the lease end date. Claimant contends that the Board based its decision on a finding that she changed the lease end date despite having been specifically told not to do so at the meeting. In fact, Claimant contends, the *owners* offered no testimony that during the meeting she mentioned that the tenants wished to end their lease early, or that she sought permission from them to change the lease end date.

---

[2] The certified record includes correspondence from the Unemployment Compensation Claims Manager to Chris McCool stating that Employer listed several infractions on the Employer Questionnaire and advising that, for unemployment compensation purposes, "we go by the final incident that caused the separation"; in the email, the Claims Manager asked whether there was one specific incident that caused the separation or whether it was overall job performance. (Record Item 3, Employer Separation Information, 4/19/16 email.) Employer responded with an email summarizing five separate incidents, indicating that it was the modification of the lease to change the lease end date that was "the final straw that broke the camel's back." (*Id*.)

[3] Our scope of review of the Board's decision is limited to determining whether errors of law were committed, constitutional rights or agency procedures were violated, and necessary findings of fact are supported by substantial evidence. 2 Pa. C.S. § 704; *Henderson v. Unemployment Compensation Board of Review*, 77 A.3d 699, 710 n.4 (Pa. Cmwlth. 2013).

Initially, we note that while Employer terminated Claimant's employment for multiple reasons, Claimant is disqualified from receiving benefits so long as one of those reasons constitute willful misconduct. *Glenn v. Unemployment Compensation Board of Review*, 928 A.2d 1169, 1172 (Pa. Cmwlth. 2007); *Anderson v. Unemployment Compensation Board of Review*, 485 A.2d 900, 902 (Pa. Cmwlth. 1985). Willful misconduct is defined by the courts as (i) an act of wanton or willful disregard of the employer's interest; (ii) a deliberate violation of the employer's rules; (iii) a disregard of standards of behavior which the employer has a right to expect of an employee; or (iv) negligence indicating an intentional disregard of the employer's interest or of the employee's duties and obligations to the employer. *Caterpillar, Inc. v. Unemployment Compensation Board of Review*, 703 A.2d 452, 456 (Pa. 1997); *Scott v. Unemployment Compensation Board of Review*, 36 A.3d 643, 647 (Pa. Cmwlth. 2012). The employer bears the burden of proving that the claimant engaged in willful misconduct leading to the discharge. *Caterpillar, Inc.*, 703 A.2d at 456; *Scott*, 36 A.3d at 647. If the employer makes that showing, the burden shifts to the claimant to show good cause for her conduct. *Henderson v. Unemployment Compensation Board of Review*, 77 A.3d 699, 719 (Pa. Cmwlth. 2013); *ATM Corporation of America v. Unemployment Compensation Board of Review*, 892 A.2d 859, 865 (Pa. Cmwlth. 2006).

At the Referee hearing, Chris McCool testified as to Claimant's chronic lateness and as to various incidents that occurred during the last week of her employment, wherein Claimant (i) failed to charge a tenant a new pet administration fee of which she had been made aware; (ii) misrepresented the building occupancy rate at a meeting; (iii) utilized a sick day in order to attend a

5

job interview and on another day, utilized a sick day in order to complete a work assignment for school; and (iv) interviewed for another job while at work, using the webcam in her office. (R. Item 11, H.T. at 7-14.) As to what he described as "incident number one," Chris McCool testified that Claimant changed and manipulated the lease end date for a tenant on Employer's computer system and sent him an addendum bearing the new lease end date for his signature. (*Id*., H.T. at 7.) He testified that he initially signed the addendum, but then became suspicious and searched the computer system to locate and examine the original lease; he discovered that the addendum reflected a lease end date one month earlier than that set forth on the original lease and that the date had been modified by Claimant at the request of the tenant. (*Id*., H.T. at 6-7.) He immediately contacted Claimant to notify her that he was revoking his signature. (*Id*., H.T. at 7.)

The certified record contains a fax sent to Claimant by Chris McCool on the date that he signed the addendum, indicating that he was revoking his signature, and stating, "I reviewed [the tenant's] lease…His end date is 5/31 – no one has given you the authority to end it early. He must stay until 5/31 or he owes a termination fee. We had discussed in meeting letting him go MONTH TO MONTH – not ending his lease early." (R. Item 3, Employer Separation Information.) He testified that on the day before he received the addendum with the changed lease end date, he and his brother, Andrew McCool, met with Claimant and at that time Claimant inquired as to whether they could allow the tenant to remain on a month-to-month basis after his lease expired. (R. Item 11, H.T. at 19.) Chris McCool stated that they never agreed to let the tenant out of his lease early. (*Id*.) In response to the Referee's question as to whether Claimant gave them a reason for changing the lease end date, he stated that Claimant told

6

them she "wasn't clear from the meeting" and he stated "[w]e would not let [the tenant] out of his lease early. This particular tenant and his partner had a baby, and they were bursting at the seams. There were several emails said, hey, you know, these people need to move out. Can you help them? Can you help them? So we feel that and we believe that [Claimant] let them out early as a favor." (*Id.*, H.T. at 19.) Claimant questioned Chris McCool extensively at the Referee hearing regarding details concerning many of the incidents about which he had testified, but she asked no questions about the meeting in question.

At the Referee hearing, Claimant acknowledged that she had no authority to change a lease end date. (R. Item 11, H.T. at 53.) However, she indicated that despite the fact that the lease clearly stated the end date as May 31, 2016, because its starting date was listed as May 1, 2015 and the total amount of rent due was listed as 12 times the monthly rent amount, she determined that it was supposed to be a 12-month lease, rather than a 13-month lease with one month's free rent. (*Id.*, H.T. at 51.) Claimant explained, therefore, that in preparing the addendum, she was merely correcting what she believed had been a typographic error in the original lease. (*Id.*, H.T. at 50.) She further stated that at the meeting, she pointed out to Andrew McCool that the lease showed an end date of May 31, 2016 but the total dollar amount shown was for 12 months, and he authorized her to change the lease end date. (*Id.*, H.T. at 51.) Andrew McCool testified at the Referee hearing about Claimant's work performance, and some of the incidents about which his brother had already testified, but he provided no testimony about the meeting, nor was he questioned about it by Claimant.[4]

---

[4] However, the certified record includes the record of an oral interview conducted with Employer. It indicates that in response to a question regarding Claimant's assertion that he had **(Footnote continued on next page…)**

7

In its decision, the Board credited Employer's testimony that Claimant had no permission to change the lease end date, and specifically cited Claimant's testimony that Andrew McCool told her that she could change the date, concluding that it did not find Claimant's testimony credible, nor did it find credible her suggestion that the instructions she was given at the meeting were unclear. (R. Item 16, Board's Decision/Order, Discussion.)

Notwithstanding her testimony that Employer authorized her to change the lease end date at the meeting, Claimant asserts that nothing in the McCools' testimony warrants the Board's finding that there was any discussion at all at the meeting about the possibility of changing the date. She maintains that the Board therefore erred in determining that Claimant's conduct was without approval and in direct contravention of Employer's instructions, thus exhibiting a disregard for Employer's interests and a disregard of the standards of behavior that Employer had a right to expect. (*Id*.) We disagree.

The Board found that Claimant spoke to the McCools at a meeting about allowing the tenants to terminate their lease early and that, prior to the meeting, Claimant would email the owners regarding whether they could help tenants out by letting them move out early. (*Id*., F.F. ¶¶ 4-5.) We find that there is more than sufficient evidence to establish that Claimant was aware she had no authority to change a lease end date and was not given permission do so at the meeting with the owners or at any time prior to presenting for her Employer's

---

**(continued…)**
agreed to a change in the lease end date, Andrew McCool responded, "[t]hat's a 100% lie we discussed it in a meeting that [the tenants'] term date was 5/31/16 and they could go month to month when the lease ended. She manipulated the lease end date…." (R. Item 5, Record of Employer's Oral Interviews.)

signature an addendum bearing a changed lease end date. Chris McCool's fax to Claimant following the meeting indicated that they had discussed allowing the tenant to continue the lease on a month-to-month basis, not ending the lease early, but in the same fax, he also stated that no one had given Claimant the authority to change the lease end date. Chris McCool testified that he never agreed to let the tenant out of his lease early and in his oral interview, Andrew McCool vehemently denied that he agreed to a change in the lease end date at the meeting. Claimant acknowledged that she had no authority to change a lease end date without authorization, and the Board rejected her testimony that she had been given authorization at the meeting to do so as not credible. The Board is the ultimate fact finder, and its credibility determinations and findings of fact are binding on this Court where they are supported by substantial evidence, even if there is other contrary evidence. *Bruce v. Unemployment Compensation Board of Review*, 2 A.3d 667, 671-72 (Pa. Cmwlth. 2010); *Ductmate Industries, Inc. v. Unemployment Compensation Board of Review*, 949 A.2d 338, 342 (Pa. Cmwlth. 2008). The Board's findings here are supported by substantial evidence.

We hold that the Board properly found Claimant ineligible for unemployment compensation benefits under Section 402(e) of the Law. Accordingly, the order of the board is affirmed.

_____
**JAMES GARDNER COLINS, Senior Judge**

9

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tami Davies-Coleman,         :
                          :

            Petitioner     :
                          :

        v.               : No. 1233 C.D. 2016
                          :

Unemployment Compensation   :
Board of Review,            :
                          :

           Respondent   :

## ORDER

AND NOW, this 4th day of April, 2017, the Order of the Unemployment Compensation Board of Review in the above-captioned matter is hereby AFFIRMED.

_____
**JAMES GARDNER COLINS, Senior Judge**